UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JACQUELINE STEVENS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 13 C 3382 |
| ) | |
| UNITED STATES DEPARTMENT OF ) | Chief Judge Castillo |
| HOMELAND SECURITY, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S MEMORANDUM IN SUPPORT
OF ITS MOTION FOR SUMMARY JUDGMENT AND RESPONSE
IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**Introduction**

This is an action for the release of records under the Freedom of Information Act, 5 U.S.C. § 552. Plaintiff Jacqueline Stevens seeks the release of records compiled by the defendant Department of Homeland Security, Office of Inspector General ("DHS OIG") pertaining to an individual named Adijat Edwards. Since the filing of this lawsuit, DHS OIG has conducted numerous searches for responsive records, and it has released all records to Stevens that are not exempt from disclosure pursuant to FOIA exemptions. Because DHS OIG conducted reasonable searches in response to Stevens's FOIA request, and because it has not improperly withheld agency records, it is entitled to summary judgment and Stevens's request for summary judgment should be denied.

**Legal Background**

The "basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable

to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). The statute requires each federal agency to make available to the public an array of information and sets forth procedures by which requesters may obtain such information. 5 U.S.C. § 552(a). At the same time, FOIA exempts nine categories of information from disclosure. 5 U.S.C. § 552(b)(1)-(9).

Most FOIA claims are resolved on summary judgment. *Bassiouni v. C.I.A.*, No. 02 C 4049, 2004 WL 1125919, *2 (N.D. Ill. March 31, 2004) (*citing Misciavige v. IRS*, 2 F.3d 366, 369 (11th Cir. 1993)). An agency satisfies its burden on summary judgment by providing the court and the plaintiff with affidavits or declarations and other evidence that show that the agency conducted an adequate search for records and that demonstrate that any located, responsive documents were produced or are exempt from disclosure. *See Torres v. C.I.A.*, 39 F. Supp. 2d 960, 963 (N.D. Ill. 1999), *quoting Oglesby v. United States Dept. of the Army*, 920 F.2d 57, 68 (D.C. Cir.) ("A reasonably detailed affidavit, setting forth the search terms and the types of files likely to contain responsive records (if such records exist) were searched, is necessary to afford a FOIA requester an opportunity to challenge the adequacy of the search and to allow the district court to determine if the search was adequate in order to grant summary judgment."); *Carney v. United States Dept. of Justice*, 19 F.3d 807, 812 (2d Cir. 1994) ("Affidavits or declarations supplying facts indicating that the agency has conducted a thorough search and giving reasonably detailed explanations why any withheld documents fall within an exemption are sufficient to sustain the agency's burden.") (citations omitted). Importantly, "the agency's submissions are accorded a presumption of good faith." *Demma v. United States Dept. of Justice*, No. 93 C 7296, 1996 WL 11932, at *3 (N.D. Ill. Jan. 10, 1996), *quoting Carney*, 19 F.3d at 812. In a FOIA case, the district court's review is limited to determining whether the agency (1)

improperly (2) withheld (3) agency records. *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 150 (1980) (judicial remedial authority dependent on agency violation of all three components).

## Argument

### I. The OIG Conducted Reasonable and Good-Faith Searches for Responsive Records.

In order to obtain summary judgment, the agency must show that it made a "good faith effort" to conduct a search for the requested records. *Hart v. Federal Bureau of Investigation*, 91 F.3d 146 (Table), No. 95-2110, 1996 WL 403016, at *2 (7th Cir. July 16, 1996), *citing Patterson v. IRS*, 56 F.3d 832, 841 (7th Cir. 1995); *Oglesby v. United States Dept. of the Army*, 920 F.2d 57, 68 (D.C. Cir.1990); *see also Morley v. CIA*, 508 F.3d 1108, 1114 (D.C. Cir. 2007) ("The court applies a 'reasonableness' test to determine the 'adequacy' of a search methodology, consistent with congressional intent tilting the scale in favor of disclosure") (citations omitted); *Maynard v. CIA*, 986 F.2d 547, 559 (1st Cir. 1993) (noting that "crucial" search issue is whether agency's search was "reasonably calculated to discover the requested documents"). The search's adequacy is judged by a standard of reasonableness, and the "agency may establish the reasonableness of its search through affidavits that provide a reasonably detailed and nonconclusory description of the agency's search method and procedures." *Hart*, 1996 WL 403016, at *2. The agency's search methods must "demonstrate that [the agency] has conducted a search reasonably calculated to uncover all relevant documents." *Id., citing Citizens Comm'n on Human Rights v. FDA*, 45 F.3d 1325, 1328 (9th Cir. 1995) (*quoting Zemansky v. E.P.A.*, 767 F.2d 569, 571 (9th Cir.1985)). The fundamental question is not "whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate." *Steinberg v. DOJ*, 23 F.3d 548, 551 (D.C. Cir. 1994) (*quoting*

3

*Weisberg v. DOJ*, 745 F.2d 1476, 1485 (D.C.Cir. 1984)); *Citizens*, 45 F.3d at 1328; *see also Becker v. IRS*, 34 F.3d 398, 406 (7th Cir. 1994); *see also Morley*, 508 F.3d at 1120 ("failure of an agency to turn up one specific document in its search does not alone render a search inadequate") (internal citation omitted). Here, several searches were conducted, and those cumulative searches demonstrate that the agency conducted an adequate search that was reasonably calculated to locate all responsive records. Defendant's Local Rule 56.1 Statement of Material Fact (hereinafter "SMF") at ¶¶ 9, 13-14, 19, 27, 30-31, 34, 36, 41.

In her motion for summary judgment, Stevens makes three arguments that she believes demonstrate that the agency's efforts were inadequate. Namely, Stevens asserts that: (1) the agency has not provided a detailed and adequate description of the sources searched; (2) that the agency has not explained why its initial searches did not contain information from the case file that was eventually produced after subsequent searches; and (3) that the agency has not produced a record (a breakdown of video time frames) that it has been unable to locate despite its numerous searches. None of these arguments entitle Stevens to any relief, and each of the arguments is addressed below.

*First*, the agency has provided detailed information regarding its search efforts. As explained in the Kuehn Declaration, the agency has conducted several searches for responsive records. Specifically, the FOIA office first initiated a search in the OIG's office of investigations, and that office then conducted a search of "EDS," the database most likely to contain responsive records. Following this search, *five* additional searches were conducted within the Chicago field office, the office deemed most likely to have any additional responsive records, and an additional search was conducted of EDS. *Id.* at ¶ 40, *citing* Kuehn Decl. at ¶ 26.

All identified records were processed and all non-exempt records were released to Stevens. *Id.* at ¶ 41.

Stevens contends that the Kuehn Declaration is insufficient because of a discrepancy between a document produced to Stevens and the explanation of the search efforts provided in the declaration. Specifically, Stevens contends that while the declaration asserts that a search was initiated of the EDS database on March 28, 2013, that a document produced to Stevens indicates that no search was actually conducted on this date. Dkt. 40 at 4. This assertion is misplaced and may represent a misunderstanding of the Kuehn Declaration. The declaration states that the first search was "initiated at INV headquarters on March 28, 2013." Response to plaintiff's statement of fact at ¶ 9. This means that on March 28, 2013, the "FOIA unit formally requested that the Office of Investigations conduct a search for records responsive to" Stevens's request. *Id.* The EDS activity log that was provided to Stevens does not document the search that was conducted within the EDS database because the activity log only tracked changes within the database that consisted of "edit" or "delete." *Id.* at ¶ 11. Accordingly, the EDS database simply did not log the search activity, and this is the reason that the search does not show up on the log that was produced to Stevens. The fact that the EDS activity log did not document that the search took place is immaterial; the Kuehn Declaration provides sufficiently detailed information regarding the search efforts that the agency conducted, and those search efforts were adequate. *See Nation Magazine v. U.S. Customs Serv.*, 71 F. 3d 885, 890 (D.C. Cir. 1995) (*quoting Oglesbey v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990); *Schoenman v. FBI*, No. 04-2202, 2009 WL 763065, at *10 (D.D.C. Mar. 19, 2009) ("In determining the adequacy of a FOIA search, the Court is guided by principles of reasonableness."); *Bonaparte v.*

*DOJ*, 531 F. Supp. 2d 118, 122 (D.D.C. 2008) ("The Court's review of the adequacy of an agency's search for responsive record[s] is based on principles of reasonableness").

*Second*, while the agency's initial search efforts admittedly did not result in the production of all records that were responsive to Stevens's request, its cumulative search efforts are both reasonable and adequate. In her brief, Stevens points out that the agency initiated several searches within the field office, but that the FOIA office identified some problems with the initial search efforts and eventually required that the original case file be sent to the FOIA office from the field office so that the FOIA office could examine the complete, original case file. Dkt. 40 at 5. Ultimately, the FOIA office processed the original case file and ensured that all non-exempt records within the file were produced to Stevens. SMF at ¶ 34. The fact that the agency admitted shortcomings with the initial search efforts and then redoubled its efforts demonstrates that the agency acted in good faith and that the search efforts were reasonable. The agency's remedial efforts do not demonstrate bad faith and do not entitle Stevens to additional relief. *See Maynard v. CIA*, 986 F.2d 547, 565 (1st Cir. 1993) ("Rather than bad faith, we think that the forthright disclosure by the INS that it had located the misplaced file suggests good faith on the part of the agency."); *Meeropol v. Meese*, 790 F.2d 942, 953 (D.C. Cir. 1986) (rejecting argument that later-produced records call the adequacy of search into question, because "[i]t would be unreasonable to expect even the most exhaustive search to uncover every responsive file"); *Peay v. DOJ*, No. 04-1859, 2006 WL 1805616, at *1 (D.D.C. June 29, 2006) (noting that newly discovered responsive records were not evidence of agency bad faith, but rather was "oversight and, at worst, ineptness on the part of the previous reviewer"); *Nat'l Inst. of Military Justice v. U.S. Dep't of Defense*, 404 F. Supp. 2d 325, 333-34 (D.D.C. Dec. 16, 2005) (stating that "[a]lthough the agency was not initially diligent, that alone does not demonstrate bad faith,

6

especially in light of the subsequent efforts to search for responsive records"); *Lechliter v. DOD*, 371 F. Supp. 2d 589, 593 (D. Del. June 15, 2005) (finding that agency acted in good faith by locating additional documents after error associated with its initial search was corrected); *Muhammad v. U.S. Customs & Border Prot.*, 559 F. Supp. 2d 5, 8 (D.D.C. 2008) ("[T]he fact that the agency initially failed to disclose two pages from the Atlanta field office's case file due to human error does not render the search inadequate or suggest bad faith on the agency's part."); *Fischer v. DOJ*, 723 F. Supp. 2d. 104, 108-09 (D.D.C. 2010) (ruling that "mistakes do not imply bad faith" and, in fact, "the agency's cooperative behavior of notifying the Court and plaintiff that it had discovered a mistake, if anything, shows good faith"). Ultimately, the "FOIA does not mandate a 'perfect' search, only an 'adequate' one." *Vest v. Dep't of the Air Force*, 793 F. Supp. 2d 103, 120 (D.D.C. 2011); *see also Ramstack v. Dep't of the Army*, 607 F.Supp. 2d 94, 105 (D.D.C. 2009) ("The principal issue is not whether the agency's search uncovered responsive documents, but whether the search was reasonable."); *Snyder v. CIA*, 230 F. Supp. 2d 17, 21 (D.D.C. 2002) (stipulating that FOIA does not require a search of "every conceivable area where responsive records might be found").

*Third*, Stevens is correct that the agency has been unable to provide a document containing a breakdown of a video from the Minneapolis airport. Dkt. 40 at 5. The DHS-OIG FOIA office has been unable to locate this record despite its numerous searches, including its review of the original case file from the Chicago Field Office. Kuehn Decl. at ¶ 37 (indicating that the field office specifically advised the FOIA unit that the referenced breakdown of camera views and time stamps was not located); *id.* at ¶ 39 (indicating that the field office mailed the FOIA unit the entire original copy of the investigative case file). Thus, DHS OIG fully acknowledged that it cannot locate the relevant breakdown of the different camera views and

time stamps, but "[n]othing in the law requires the agency to document the fate of documents it cannot find." *Roberts v. DOJ*, No. 92-1707, 1995 WL 356320, at *2 (D.D.C. Jan. 28, 1993).

Accordingly, the Kuehn Declaration provides sufficient information for this court regarding the steps that the agency took to locate records that were responsive to Stevens's request, and the agency has demonstrated that it has conducted an adequate search for records. The agency is entitled to summary judgment with regard to the adequacy of the search.

## II. The DHS-OIG Properly Processed the Airport Security Footage.

Stevens contends that she is entitled to summary judgment because the DHS OIG withheld a DVD containing airport security footage. Stevens's arguments should be rejected for two reasons. First, DHS OIG properly withheld this footage pursuant to FOIA's exemptions, and the agency does not possess the technology to redact the footage to protect just the exempt information. Second, and more importantly, Stevens narrowed the scope of the request for this DVD footage during the course of this litigation, and the agency properly responded to Stevens's narrowed request.

### A. The Security Footage Was Properly Withheld in Full.

The DVD containing airport security footage is properly withheld as it contains sensitive security footage that could interfere with airport security if released to the public, and in contains images of third-parties and law enforcement officials that are entitled to privacy. Accordingly, the information is properly withheld pursuant to Exemptions (b)(3), (b)(7)(C), and (b)(7)(E). *See* Kuehn Decl. at ¶¶ 47-48, 50, 59-73. The DVD contains information that was confirmed with the Transportation Security Administration to be sensitive security information pursuant to 49 U.S.C. § 114(4)(1)(C). SMF at ¶¶ 44-45. TSA specifically advised OIG that both 49 C.F.R. § 1520.5(b)(8)(i) and (b)(9)(i) of the sensitive-security regulation apply to protect the video

footage, and that the release of this information would improperly allow individuals to identify certain patterns of airport security procedures. *Id.* at ¶ 45. Additionally, the video footage is protected by Exemption 7(E), as the DVD was compiled for law enforcement purposes and could reasonably be expected to cause harm if released to the public. *See FBI v. Abramson*, 456 U.S. 615, 622 (1982). Lastly, the DVD is protected because it identifies third parties and is exempt from production pursuant to Exemption 7(C).

In her motion for summary judgment, Stevens does not argue that these exemptions do not apply to the security footage. Rather, Stevens argues that the agency has not fulfilled its burden by demonstrating that it cannot produce any reasonably segregable, non-exempt information from the DVD. Dkt. 40 at 8-9. Stevens' arguments fail. First, the Kuehn declaration states that the agency does not possess the technology to segregate the DVD. She explained that the "videos showing Adijat Edwards are contained within a larger computer program consisting of numerous other non-responsive videos all stored on the MSP DVD." Kuehn Decl. at ¶ 49. She then explained that "OIG does not possess the technology to extract specific videos from the DVD or redact them" *Id.* In her supplemental declaration, she provided additional details about OIG's technological capacities, and she confirmed with the directors of OIG's information technology division and its Office of Training and Workforce Development that the OIG does not have the ability to redact or extract the footage. Supplemental Kuehn Decl. at ¶ 5; *see, e.g., Milton v. DOJ*, 842 F. Supp. 2d 257, 261 (D.D.C. Feb. 8, 2012) (holding that BOP is not required to segregate plaintiff's side of telephone conversations where it lacks technological capability to do so); *Mingo v. DOJ*, 793 F. Supp. 2d 447, 452-56 (D.D.C. June 29, 2011) (finding that BOP properly withheld disks containing video footage of an "altercation and

9

images of 'at least 50 different inmates'" in full under Exemption 7(C) where it lacked technological capability to redact them).

Second, the agency produced the information that it could produce regarding the contents of the DVD. First, as explained by Kuehn, the agency produced a redacted document from the report of investigation that states that it is a summary of the information contained on the videos. *Id.* Second, as explained below, the FOIA officer personally reviewed the DVD footage and printed representative screenshots of the images on the DVD and produced those images to Stevens. *Id.* at ¶ 16.

### B. Stevens Narrowed her FOIA Request, and the Agency Produced Representative Screenshots from the Airport Footage.

Even if this court were to find that the DVD is not protected by FOIA's exemption, Stevens narrowed the scope of her request to particular screenshots on the footage, and the agency searched for the screenshots that she requested. Stevens should not be able to re-expand her request in an effort to obtain summary judgment.

After the OIG disclosed that it decided to withhold the DVD in full, Stevens requested redacted screenshots from the DVD, including: (1) the first image of Adijat Edwards and two ICE agents who escorted her to the Delta Airlines ticket counter during the first trip to the airport; (2) the clearest possible image taken by cameras near the Delta Airlines ticket counter of each individual receiving the U.S. Bank envelope from Ms. Edwards; and (3) the clearest image of Ms. Edwards not holding the bank envelope after leaving the Delta ticket area before departing the airport. Kuehn Decl. at ¶ 13. In response to this request, the FOIA unit reviewed the airport security footage, but the footage did not contain the three images that Stevens requested. *Id.* at ¶ 16. Thus, the OIG FOIA unit explained that there were no images on the footage that were responsive to the descriptions specified by Stevens. *Id.* In order to provide

some assistance to Stevens, the FOIA unit provided her with a representative sample of the images on the security footage. *Id.*

Here, Stevens set limitations on the scope of her request and she cannot subsequently challenge the agency's search on the ground that the agency limited its search accordingly. *See Jarvik v. CIA*, 741 F. Supp. 2d 106, 117 (D.D.C. 2010) (finding CIA's search adequate when requester agreed to CIA's offer to narrow scope of initial request and CIA limited its search to that narrowed scope); *Lechliter*, 371 F. Supp. 2d at 595 ("A requestor may not challenge the adequacy of a search after an agency limits the scope of a search in response to direction from the requestor."); *Votehemp, Inc. v. DEA*, 557 F.Supp.2d 1, 12 (D.D.C. 2004) (concluding that narrowed search was adequate as agency and plaintiff had agreed to search of only three offices). Additionally, Stevens cannot prevail on summary judgment because the agency did not produce the requested screenshots where the images that Stevens seeks do not exist on the DVD. Accordingly, the agency is entitled to summary judgment with regard to the withheld DVD.

### III. DHS-OIG Properly Referred a DVD to ICE, and ICE Properly Withheld that DVD.

In response to Stevens's FOIA request, DHS-OIG located a DVD that originated with the United States Immigration and Customs Enforcement ("ICE") office. Accordingly, the DHS-OIG referred that DVD to ICE for processing. Kuehn Declaration at ¶ 11. Stevens now challenges that withholding in the context of her case against the DHS-OIG. Dkt. 40 at 6-7.

The video files that were referred to ICE consist of footage taken from a security surveillance camera located in a secure room in an ICE facility used for the temporary detention of individuals. Pineiro Declaration at ¶ 10. ICE reviewed the video files on the DVD and determined that portions of the video were exempt from disclosure pursuant to FOIA exemptions 6, 7(C), and 7(E), as the footage contains images that if released would constitute an unwarranted

invasion of personal privacy. *Id.* at ¶ 11. ICE informed Stevens of its decision to withhold this DVD by letter dated June 27, 2013. *Id.*

In its declaration to this court, ICE provides further justification for its decision to withhold the DVD. Specifically, ICE attests that the release of the information on the DVD "as it relates to ICE detainees and third-party individuals would likely subject those individuals to embarrassment and/or harassment if their involvement in immigration proceedings, or images of them in handcuffs or detention cells, became known. The identities of federal law enforcement officers or other employees involved in immigration enforcement operations or in the detention of aliens could lead to reprisals against those officers, as well as undue attention or harassment from the public." *Id.* at ¶ 15. Additionally, ICE explained that the DVDs are subject to withholding pursuant to FOIA Exemption 7(E), 5 U.S.C. 552(b)(7)(E), because the release of the information could disclose law enforcement techniques and procedures related to searches of individuals in custody, handcuffing techniques, and security procedures. *Id.* at ¶ 17. Specifically, the information "would allow an unauthorized viewer to determine what areas of the facility are not under video surveillance, could show individuals other security procedures that are generally not known to the public, and could potentially allow an individual to circumvent the law by applying the knowledge gleaned from viewing video taken inside a secure area of a temporary hold room." *Id.* at ¶ 18. Accordingly, ICE withheld the video in full.

Finally, ICE's FOIA office described that it does not possess the technical capability to properly redact the exempt information from the security footage. *Id.* at ¶ 20. Accordingly, this court should deny Stevens's request for summary judgment with respect to the ICE DVD.

12

## IV. DHS-OIG Properly Redacted Documents.

In her motion for summary judgment, Stevens contends that the agency inappropriately redacted six records that were released to Stevens. This assertion is incorrect. The agency applied limited redactions to the records, and the agency provides this court with additional information regarding these redactions in the enclosed index pursuant to *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973).

As identified in the enclosed *Vaughn* index, many of the redactions made to the contested records were made pursuant to 5 U.S.C. § 552(b)(6) and (b)(7)(C), and were made with the purpose of protecting the identity of law enforcement agents and employees and/or third parties referenced in the investigatory records (including witnesses, private citizens, and other non-OIG federal government employees). It is well settled that Exemption 7(C) protects personal identifying information about law enforcement agents and employees, as well as information about subjects of an investigation or third parties mentioned in the records of an investigation. *See, e.g., Anderson v. U.S. Marshals Serv.*, 943 F. Supp. 37, 39 (D.D.C. 1996); *Bruscino v. Fed. Bureau of Prisons*, No. 94-1955, 1995 WL 444406, *10 (D.D.C. 1995); *see also Reporters Comm.*, 489 U.S. at 780 (recognizing the privacy interest inherent in law enforcement information pertaining to third parties and finding that a third-party's request for law enforcement records or information about a private citizen can reasonably be expected to invade that citizen's privacy.).

Having established the privacy interest in the withheld information concerning third parties, the OIG then determined whether disclosure of the withheld information would shed light on the operations and activities of the government. Kuehn Decl. at ¶ 60; *see also Reporters Comm.*, 489 U.S. at 772. The OIG could not identify any discernible public interest in disclosure

13

of such information because the identities of the third parties and witnesses mentioned in these records will shed little light on the operations and activities of OIG. Kuehn Decl. at ¶ 69. The OIG determined that although Stevens may be very interested in the contents of the third-party information described above, there is little public interest in disclosure of this particular information. *Id.* It is well established that plaintiff's personal interest in full disclosure of the records at issue does not rise to the level of a public interest in a FOIA action when the withheld material in question "reveals little or nothing about an agency's own conduct." *Reporters Comm.*, 489 U.S. at 773; *see also Lakin Law Firm, P.C. v. F.T.C.*, 352 F.3d 1122, 1125 (7th Cir. 2003) ("The Supreme Court has repeatedly held that the only public interest that is relevant to this balancing test is the shining of a light on an agency's performance of its statutory duties.").

Stevens sets forth no arguments suggesting a public interest in the protected information, and even suggests the interest is purely a private one, given that her remaining redaction challenges are limited to information that she alleges is "most likely to shed light on the potential misconduct that is the subject of her FOIA request." In light of the fact that there is little public interest in the disclosure of the third-party information at issue in this case, even the slightest privacy interest will tip the balance against disclosure. *Beck v. Dept. of Justice*, 997 F.2d 1489, 1494 (D.C. Cir. 1993) (observing that when a request implicates no public interest at all, court "need not linger over the balance; something . . . outweighs nothing every time" (*quoting Nat'l Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873, 879 (D.C. Cir. 1989)). Therefore, because no real public interest would be served by release of the personal information at issue in this action, and because there exists significant privacy interests for all third parties identified in the OIG's investigative records, summary judgment is appropriate for the information withheld from disclosure pursuant to Exemption 7(C).

**V.      The Withheld Records Were Inspected for Reasonably Segregable Information.**

During the course of this litigation, OIG conducted multiple reviews of the records responsive to this request to ensure that all releasable information was disclosed to Stevens. SMF at ¶¶ 38, 41, 58. In response to concerns raised by Stevens, the OIG determined that certain portions of previously withheld information could be disclosed, and such information was provided to Stevens. Also, as a courtesy to Stevens, the OIG transcribed handwritten witness statements that were properly withheld pursuant to Exemptions 6 and 7(C), so that Stevens could be assured of the contents of each statement. *Id.* at ¶ 21. The OIG has now determined that, after a thorough analysis, all the remaining withheld information remains properly withheld from disclosure pursuant to the above-cited exemptions. Thus, the OIG has determined that all reasonably segregable, nonexempt portions of the records have now been released to Stevens. SMF at ¶ 58

## Conclusion

For the reasons set forth above, and based upon the entire record herein, summary judgment should be granted in favor of the Department of Homeland Security.

Respectfully Submitted,

ZACHARY T. FARDON
Of Counsel:                                          United States Attorney

JENNIFER A. KENDRICK                                 By: s/ Abigail L. Peluso
Assistant Counsel to the Inspector General           ABIGAIL L. PELUSO
DHS/Office of Inspector General                      Assistant United States Attorney
Stop 2600, 245 Murray Drive, SW, Bldg. 410           219 South Dearborn Street
Washington, DC  20002                                Chicago, Illinois 60604
(202) 254-4096                                       (312) 353-5342
 jennifer.kendrick@dhs.gov                           abigail.peluso@usdoj.gov