UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **JACQUELINE STEVENS**, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 13 C 3382 ) |
| **UNITED STATES DEPARTMENT OF HOMELAND SECURITY**, | ) Chief Judge Rubén Castillo ) ) ) |
| Defendant. | ) |

**PLAINTIFF'S REPLY AND RESPONSE**

Plaintiff Jacqueline Stevens ("Plaintiff" or "Professor Stevens") respectfully submits this Reply in further support of her Motion for Partial Summary Judgment, Dkt. 36, and in opposition to the Cross-Motion for Summary Judgment by Defendant United States Department of Homeland Security ("Defendant" or "OIG" or "Department"). Dkt. 45. Because OIG has not carried its burden of justifying the adequacy of its search and the propriety of its withholdings, Professor Stevens is entitled to judgment as a matter of law, and Defendant's cross-motion should be denied.

**A. Professor Stevens Is Entitled To Partial Summary Judgment Because OIG Has Failed to Demonstrate It Conducted An Adequate Search.**

Over eighteen months ago, Professor Stevens filed a Freedom of Information Act ("FOIA") request seeking records from DHS-OIG about its investigation into criminal allegations against agents of U.S. Immigration and Customs Enforcement ("ICE"). Dkt. 37-1, ¶¶4, 6. The agency's disclosures of responsive records since then have two things in common. First, each time the agency has made a "final" disclosure of records, it has assured Professor

Stevens that no additional records were available. Second, each set of records OIG disclosed in its "final" production has revealed the existence of one or more responsive documents not yet provided.

The declarations OIG has submitted do not carry the agency's burden of demonstrating the agency conducted a search that was "reasonably calculated" to produce all responsive documents. *See Becker v. IRS*, 34 F.3d 398, 406 (7th Cir. 1994). This is because the Second Kuehn Declaration, Dkt. 44-1 ¶¶ 32-45, fails to explain why the OIG agents in the Chicago field office who conducted the fifth and final search can be relied upon to produce all responsive records, despite their previous four failed attempts to do so. It is, after all, these same OIG agents whose performance and potential mishandling of a criminal probe Professor Stevens hoped to investigate when she filed her FOIA request with OIG. *See* Supplemental Declaration of Jacqueline Stevens (attached hereto). OIG's searches of the Chicago field office were objectively unreasonable because the FOIA office allowed personnel whose potential misconduct would be revealed by a complete production of agency records to perform the search, even after these agents demonstrably failed turn over all records on four prior occasions.

Though OIG asserts, without citation to any evidence in the record, that "the FOIA office identified some problems with the initial search within the field office," Dkt. 47 at 6, the record demonstrates otherwise. It was Plaintiff – not the FOIA office – who had to critically analyze each and every production the OIG Chicago field office made and demonstrate to the FOIA office why these productions indicated an inadequate search, and more records existed that had not been produced. *See* Dkt. 44-1 at 49 (Exhibit 7 to Second Kuehn Declaration); *Id.* at 56 (Ex. 8 to Second Kuehn Decl.); *Id.* at 70 (Exhibit 12 to Second Kuehn Decl.); Dkt. 23. After four unsuccessful attempts to identify and produce all responsive records – each likely accompanied

by a sworn statement from the searching agent that all responsive records have been produced – the Department now asks the Plaintiff and the Court to believe that the search is complete. The FOIA requires otherwise.

Unlike the authorities OIG provides to support its assertion that multiple searches demonstrate diligence, rather than unreasonableness of the agency's search, DHS never disclosed that its searches were inadequate until Plaintiff pointed this out. Dkt. 47 at 6 (Defs. Cross-Mot. for Summary Judgment). For instance, in *Maynard v. CIA*, the agency itself brought its oversights to the attention of the Court. 986 F.2d 547 (1st Cir. 1993). Similarly, in *Peay v. DOJ*, the agency used more than one reviewer when confronted with the previous search's inadequacy. No. 04-1859, 2006 WL 1805616 (D.D.C. Jun. 29, 2006). Here, OIG does the opposite. Rather than explaining what was wrong with the previous searches and how the OIG FOIA office sought to fix it, the agency contends that the "cumulative search efforts" of four demonstrably inadequate searches somehow renders all of them – including the fifth – "both reasonable and adequate." Dkt. 47 at 6. According to DHS's logic, four "wrongs" and one "that's our final answer" make a right.

A search reasonably calculated to produce all responsive records would, in this case, require the OIG FOIA office to task additional, disinterested personnel with searching the Chicago field office's files to determine whether any additional records – including the missing video breakdown – exist. Because the agency did not take this step, or explain what steps it took to correct the previous errors in the search, it has not carried its burden, and Plaintiff is entitled to summary judgment on the issue of whether DHS has conducted an adequate search.

//

//

**B. Professor Stevens Is Entitled To Partial Summary Judgment Because DHS Has Improperly Withheld Agency Records.**

DHS has not carried its burden of demonstrating it has released all reasonably segregable portions of responsive records. There are three principal sets of records at issue in the parties' dispute regarding the propriety of OIG's withholdings: (1) the TSA airport video; (2) the ICE detention cell video; and (3) the six documents attached to Plaintiff's Motion for Partial Summary Judgment. Because Plaintiff's arguments regarding release of segregable portions of each DVD are essentially the same, these three issues collapse into two.

    1.  *OIG and ICE Have Not Carried Their Burden of Demonstrating They Are Technologically Incapable of Segregating and Redacting Responsive Portions of Each DVD.*

OIG and ICE both claim they lack the technology to segregate non-exempt portions of the responsive DVDs. *See* Dkt. 44-2, Third Kuehn Decl. ¶ 5; Dkt. 44-3, Pineiro Decl. ¶¶ 21-22. The agencies' claims of technological inability boil down to essentially the same explanation: neither FOIA office has this capability because neither agency wants its FOIA office to have it. It violates both the spirit and the letter of the FOIA to allow an agency to create and maintain massive amounts of agency records in a video format without requiring that agency to maintain the capability to properly segregate and disclose these records. *See* 5 U.S.C. § 552(b) ("Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection.").

**OIG's Technological Capabilities**

OIG admits that the agency has access to technology that would allow editing and redaction. Dkt. 44-2, Third Kuehn Declaration, ¶ 5 (describing DHS Headquarters' use of Adobe's "Creative Suite," which includes the video editing software "Premier Pro."). But it

4

claims OIG's license is limited to using this software for educational purposes, so the FOIA office cannot use it to comply with the Act. *Id.*

OIG has thus made a choice: it will purchase a license for the software necessary to create e-learning modules, but not a license for the same software that would enable it to fully comply with the Freedom of Information Act (FOIA). This would be like the Bureau of Prisons in *Milton v. DOJ* purchasing the technology to edit and redact recorded conference calls for its wardens and correctional officers, but refusing to use that same technology to edit and redact inmate calls. 842 F. Supp. 2d 257 (D.D.C. 2012). Likewise if the BOP in *Mingo v. DOJ* purchased video editing software that was licensed for the purpose of recording and editing footage of correctional officers training for a prison riot, but refused to extend the license to edit and redact actual video of riots in response of FOIA requests. 793 F. Supp. 2d 447 (D.D.C. 2011). This policy choice, which can at best be described as benign neglect, violates the FOIA's animating policy of making the fullest possible disclosure of agency records. A calculation not to equip and train FOIA officers with the tools necessary to fully disclose records in the agency's possession has never been rewarded by any reviewing court. Nor should it be in this case.

**ICE's Technological Capabilities**

ICE's description of the technology it makes available to its FOIA officers reveals even less regard for compliance with the FOIA than OIG. Dkt. 44-3 ¶¶ 21-22. To be sure, ICE has a highly sophisticated video production team that is hard at work shooting, editing, and redacting footage. *See* https://www.youtube.com/user/wwwICEgov/videos. When the agency wants to, it is perfectly capable of redacting images to mask the identity of individuals on screen. *See, e.g.*, wwwICEgov, Operation Cross Check: 3100 Arrests, YouTube (Apr. 12, 2012) at 00:19[1], 00:43[2],

---

[1] https://www.youtube.com/watch?v=RrI7c_-UdC0&list=PLECF34A853633B6F9#t=19
[2] https://www.youtube.com/watch?v=RrI7c_-UdC0&list=PLECF34A853633B6F9#t=43

and 00:58[3]; wwwICEgov, Operation Dark Night, YouTube (Jan. 25, 2013) at 00:17[4]. But the agency claims, through Mr. Pineiro, that the ICE FOIA Office only produces records in two formats: Adobe .pdf and Microsoft Excel. Dkt. 44-3 ¶ 21. It does this despite the fact that ICE regularly receives FOIA requests for video and audio. *See* ICE FOIA Logs Tab, ICE FOIA Library, *available at* http://www.ice.gov/foia/library/. A search of each month's FOIA log file reveals "video" in the records requested in each month's .pdf summary dating back to at least January of 2013.[5]

Like OIG, ICE has made a conscious choice not to make video editing and redaction capabilities available to its FOIA office. It is not that the technology is unavailable to the agency. It is that the agency does not make the technology available to the FOIA office. This policy decision to exclude entire formats of agency records from production violates the Freedom of Information Act's animating purpose, as well as its plain language. *See* 5 U.S.C. § 552(b). And it has the drastic consequence of literally blocking from public view all agency actions captured on video files that are partially exempt from disclosure.

Because both OIG and ICE have unreasonably withheld from their FOIA offices the technological capability to segregate non-exempt agency records, these agencies' withholdings of the TSA and ICE DVDs in full are improper. Plaintiff is therefore entitled to partial summary judgment.

> 2. *The Third Kuehn Declaration Provides No Specific Justification for the Challenged Document Redactions*.

---

[3] https://www.youtube.com/watch?v=RrI7c_-UdC0&list=PLECF34A853633B6F9#t=58
[4] https://www.youtube.com/watch?v=pJAKUppd-cs&list=UURx26nQvgQIo-1CR_1z3tIA#t=17
[5] Plaintiff respectfully requests that the Court take judicial notice of the videos on ICE's YouTube Page and the .pdf files on ICE's FOIA Logs Tab within the agency's FOIA reading room.

Though Plaintiff explicitly narrowed her challenges to OIG's redactions to six discrete documents, neither the Second nor the Third Kuehn Declaration sets forth a specific justification for the withholdings in those documents. *See* Dkt. 44-1 (setting forth generalized justifications for withholdings under each exemption without directly addressing the challenged withholdings), Dkt. 44-2 ¶¶ 5-13 (same). The agency must justify each withholding, rather than simply offering broad, generalized justifications to satisfy its obligations under the FOIA. *Patterson v. IRS*, 56 F. 3d 832, 836 (7th Cir. 1995). OIG has not done so. Accordingly, Plaintiff is entitled to partial summary judgment as to the six challenged redactions in her Motion.

## Conclusion

For the foregoing reasons, Plaintiff respectfully requests that the Court GRANT her Motion for Partial Summary Judgment, DENY Defendant's Cross-Motion in its entirety, and order Defendant to comply with the FOIA no later than thirty (30) days after entry of the Court's Order.

Date: September 5, 2014                Respectfully submitted,

s/ R. Andrew Free
R. Andrew Free
Law Office of R. Andrew Free
Bank of America Plaza
414 Union Street, Suite 900
Nashville, Tennessee 37219
(615) 244-2202
Andrew@ImmigrantCivilRights.com
**Attorney for Plaintiff**

**Local Counsel:**

Mark M. Fleming
208 S. LaSalle St., Suite 1300
Chicago, IL 60604

## CERTFICATE OF SERVICE

I hereby certify that I have served a true and correct copy of the foregoing *Plaintiff's Reply and Response* and all attachments thereto upon counsel listed below via this Court's CM/ECF system on today's date, September 5, 2014.

    Abigail L. Peluso
    Assistant United States Attorney
    219 South Dearborn Street
    Chicago, Illinois 60604

Date: September 5, 2014        /R. Andrew Free
                                        R. Andrew Free