UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JACQUELINE STEVENS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 13 C 3382 |
| | ) | |
| UNITED STATES DEPARTMENT OF | ) | Chief Judge Castillo |
| HOMELAND SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

---

**PLAINTIFF'S RESPONSE TO
DEFENDANT'S STATEMENT OF MATERIAL FACTS**

---

Plaintiff Jacqueline Stevens submits the following statement of material facts submitted by Defendant, Dkt. 44:

1.     The DHS is a federal agency as defined by 5 U.S.C. § 552(f). Answer to Complaint for Declaratory and Injunctive Relief ("Answer") at ¶ 6, Dkt. 11.

**RESPONSE**: Undisputed.

2.     The Office of Inspector General ("OIG") is organizationally a component of DHS, but operates independently of the DHS and all offices within it. By law, DHS OIG is responsible for conducting and supervising audits and investigations relating to DHS programs and operations, among other things. *Id.*

**RESPONSE**: Undisputed.

3.     Plaintiff Jacqueline Stevens ("Stevens") states that she is a professor of political science and director of the Deportation Research Clinic at Northwestern University, and that her office and principal place of residence are in Cook County, Illinois. Complaint at ¶ 5, Dkt. 1.

**RESPONSE**: Undisputed.

4.      On February 8, 2011, Adijat Edwards was deported, through an expedited removal process, to Nigeria from the United States of America by Immigration and Customs Enforcement ("ICE"), a component of the DHS. *Id.* at ¶ 7, Dkt. 1; *see also* Answer at ¶ 7, Dkt. 11.

**RESPONSE**: Undisputed.

5.      The DHS OIG investigated an allegation that $1200 in United States currency and jewelry belonging to Adijat Edwards was stolen while she was a DHS ICE detainee. Answer ¶ 8, Dkt. 11.

**RESPONSE**: Undisputed.

6.      By email dated March 20, 2013, Stevens submitted to OIG a Freedom of Information Act ("FOIA") request seeking all items created, received, or at any time possessed by an OIG Special Agent with the OIG Chicago Field Office pertaining to Adijat Edwards. The request included a privacy waiver from Ms. Edwards consenting release of these records to Stevens.  *See* Ex. A, submitted in support of defendant's response to plaintiff's 56.1 statement of material facts, declaration of Stephanie L. Kuehn (hereinafter "Exhibit A") at ¶ 5; *see also* Ex. A at Ex. 1, plaintiff's FOIA request.

**RESPONSE**: Undisputed.

7.      By letter dated March 28, 2013, OIG notified Stevens that OIG received the FOIA request on March 20, 2013, and assigned it FOIA tracking number 2013-070. OIG also advised that the request was placed in the queue for processing in the order in which it was received and, although OIG anticipated responding to the request within 20 business days, the actual time required to respond depended on how many responsive records were located and the types of

records identified in the search. Ex. A at ¶ 6; *see also* Ex. A at Ex. 3, OIG acknowledgment letter.

      **RESPONSE**: Undisputed.

      8.    On March 28, 2013, the OIG initiated a search within the OIG's Office of Investigations (INV), which was the OIG office determined most likely to maintain records responsive to Stevens' FOIA request. The management analyst assigned to conduct FOIA searches for INV searched the electronic database known as "EDS" for responsive records. EDS is a Privacy Act system of records titled, "Department of Homeland Security Office of the Inspector General—002 Investigative Records System of Records" (commonly referred to as the Enforcement Data System, or EDS). EDS is the sole records repository and management system used to track allegations (i.e. complaints) received/adjudicated and investigations initiated. All allegations received by the OIG are inputted into the system for accountability and disposition. Ex. A at ¶¶ 22, 25, 27; Ex. B, supplemental declaration of Stephanie L. Kuehn, at ¶¶ 14-16.

      **RESPONSE**: Undisputed.

      9.    On April 4, 2013, the management analyst conducted that initial search using the EDS search field that locates records by an individual's name and the search terms "Adijat Edwards," and "Adijat." No responsive records were located. The management analyst then conducted a search using the EDS search field that locates records by the text found within initial complaint narratives and Ms. Edwards' A-number and her name ("Adijat Edwards") as the search terms. No responsive records were located with the A-number; however, the report of investigation ("ROI") pertaining to Ms. Edwards was located with the search term, "Adijat Edwards." The management analyst then provided the FOIA unit with the ROI responsive to the FOIA request, consisting of an investigative summary and 20 exhibits. Ex. A at ¶ 27; Ex. B ¶14.

**RESPONSE**: Undisputed.

10.     By email dated April 30, 2013, to the OIG, Stevens submitted an administrative appeal, claiming constructive denial of her FOIA request. By letter dated May 7, 2013, to Stevens, the OIG acknowledged receipt of her administrative appeal. Ex. A at ¶ 7; *see also* Ex. A at Ex. 4, Plaintiff's administrative appeal and OIG appeal acknowledgment letter.

**RESPONSE**: Undisputed.

11.     On May 6, 2013, Stevens filed her complaint in the instant action. Compl., Dkt. 1.; *see also* Ex. A at ¶ 8.

**RESPONSE**: Undisputed.

12.     By letter dated June 5, 2013, to Stevens, the OIG provided Stevens with its first interim response to her FOIA request. This response included releaseable portions of the responsive OIG ROI's main investigative summary. Of the eight pages, two pages were released in full and six pages were released in part. OIG advised Stevens that exemptions (b)(6) and (b)(7)(C) of the FOIA were invoked for the partial withholdings. Ex. A at ¶ 9; *see also* Ex. A at Ex. 5, OIG's first interim response.

**RESPONSE**: Undisputed.

13.     On June 6, 2013, the FOIA unit emailed the management analyst to ensure a thorough search for all responsive records was conducted within INV, including the INV Chicago Field Office ("field office"). The management analyst subsequently forwarded the search request to the field office. That field office search included a search of the hard copy case file associated with Ms. Edwards' investigation, which was located in the field office file room where case files are organized chronologically by case year. Ex. A at ¶ 32.

**RESPONSE**: Undisputed.

4

14.     On June 11 and 12, 2013, the OIG FOIA unit emailed the field office directly to request that the field office provide the FOIA unit with all additional responsive documents, including emails and other records. The field office provided the OIG FOIA unit with those records on June 12, 2013, via email. The field office also notified the OIG FOIA unit at that time that copies of three responsive digital versatile discs (DVDs) were mailed to the OIG FOIA unit, and indicated that all records responsive to the request had now been provided. Ex. A at ¶ 33.

RESPONSE: Undisputed.

15.     By letter dated July 3, 2013, the OIG provided Stevens with its "final response" to her FOIA request. This response included releaseable portions of all 20 ROI exhibits, as well as other records obtained from the Chicago Field Office. The OIG released 71 pages in full, released 70 pages in part, and withheld seven pages and two DVDs in full. The OIG did not provide thirteen pages of duplicate records. Additionally, the OIG made a discretionary disclosure of additional information in the ROI main investigative summary that was originally withheld in the OIG's interim response dated June 5, 2013. The OIG advised Stevens that it withheld information pursuant to FOIA exemptions (b)(3), (b)(6), and (b)(7)(C) of the FOIA. Ex. A at ¶ 10; Ex. B at ¶¶ 5-6; *see also* Ex. A at Ex. 6, OIG's "final response".

RESPONSE: Disputed that OIG's disclosures of additional information non-exempt records under the FOIA was "discretionary," but Plaintiff avers that this fact is immaterial to the motions before the Court.

16.     In that same letter dated July 3, 2013, the OIG advised Stevens that it had

5

referred 75 pages of responsive records and one responsive DVD to DHS ICE for processing and direct response. Ex. A at ¶ 11; *see also* Ex. A at Ex. 6, OIG's "Final Response". This referral was made in accordance with DHS regulations, which require DHS entities to determine whether another entity is better able to determine whether records are exempt from disclosure under the FOIA, and if so, then the record must be referred to the other entity. Ex. A. at ¶ 11; *see also* 6

C.F.R. § 5.4(c)(2).

> **RESPONSE**: Undisputed.

17.    With regard to the DVD, ICE reviewed the video files and in a letter dated June 27, 2013, informed Stevens that portions of the video were exempt from disclosure pursuant to exemptions 6, 7(C), and 7(E). Ex. C, Pineiro declaration at ¶¶ 10-11.

> **RESPONSE**: Undisputed.

18.    By letter dated July 30, 2013, plaintiff's counsel raised concerns about the adequacy of OIG's search and also challenged the OIG's withholding of certain information pursuant to FOIA Exemptions (b)(6) and (b)(7)(C). Ex. A at ¶ 12; Ex. B at ¶ 6; *see also* Ex. A at Ex. 7, plaintiff's letter dated July 30, 2013.

> **RESPONSE**: Undisputed.

19.    The OIG initiated a second search within the field office on July 31, 2013. At that time, the field office advised that it would copy the entire case file and send it to the FOIA unit. On August 1, 2013, the field office then copied and provided to the FOIA unit records from the hard copy case file which included a tracking log from EDS and other miscellaneous logs and records from the case file. On August 2, 2013, the field office provided responsive emails from the assigned investigator's Outlook email account – in an email folder created for the OIG's investigation of Ms. Edwards' allegations. Ex. A at ¶¶ 34, 35; Ex. B at ¶ 17.

**RESPONSE**: Undisputed.

20.     By letter dated August 13, 2013, Stevens supplemented her July 30, 2013 letter and agreed to narrow the FOIA request regarding the two DVDs withheld in full by OIG. Stevens agreed to OIG's withholding of all or part of the DVD showing U.S. Bank security footage ("U.S. Bank DVD"). Additionally, Stevens agreed to receive only certain screenshots from the DVD showing Minneapolis – St. Paul Airport security footage ("MSP DVD") redacted to protect third party privacy as necessary. Specifically, she sought various images showing the Delta Airlines ticket counter, including any image of Adijat Edwards holding a bank envelope. Ex. A. at at ¶ 13; Ex. B at ¶ 7; *see also* Ex. A at Ex. 8, plaintiff's letter.


       **RESPONSE:** Disputed in part. Plaintiff did not agree to narrow her request as to the TSA

       DVD. While the Letter attached as Exhibit 8 to the Kuehn Declaration demonstrates she

       explicitly agreed to narrow the request for the US Bank DVD, the language regarding the

       TSA DVD is starkly different, "In addition," and represents no such agreement.

21.     By letter dated August 29, 2013, the OIG provided Stevens with its first supplemental response, including additional records from the field office investigative file. Additionally, the OIG provided, as a courtesy to Stevens, transcribed copies of the handwritten statements that were withheld in full from OIG's final response dated July 3, 2013. With this supplemental response, the OIG released 26 additional pages——two pages in full and 24 pages in part. The OIG also referred 11 pages to the DHS U.S. Citizenship and Immigration Services. ("USCIS"), and 58 pages to the DHS ICE for processing and direct response to Stevens. The OIG did not provide 19 other pages because they were duplicates of records already processed. The OIG also advised Stevens that it withheld information pursuant to exemptions (b)(5), (b)(6), and (b)(7)(C) of the FOIA. Ex. A at ¶

14; Ex. B at ¶ 6; *see also* Ex. A at Ex. 9, OIG's first supplemental response.

**RESPONSE**: Disputed that transcription of the handwritten statements was "a courtesy" insomuch as production of the original statements themselves was required by the FOIA. This dispute, however, is not material to either party's Motion.

22. By letter dated August 29, 2013, ICE released redacted versions of the 58 pages that were referred to it by DHS-OIG. Ex. C at ¶ 9.

**RESPONSE**: Undisputed.

23. By email dated September 6, 2013, the OIG made a discretionary disclosure of additional releaseable information from ROI Exhibits 6, 7, 8 and 10. Ex. A at ¶ 15; Ex. B at ¶¶ 6, 9; *see also* Ex. 10, e-mail to plaintiff.

**RESPONSE:** Disputed that OIG's disclosure of nonexempt agency records under the FOIA was "discretionary." However, Plaintiff submits this dispute is not material to the issues before the Court.

24. By letter dated September 9, 2013, the OIG provided Stevens with its second supplemental response, which included what the OIG understood to be the remaining responsive records maintained at the Chicago Field office and located during the field office's second search. This letter also responded to Stevens' narrowed request concerning the MSP DVD, and explained that it had reviewed the MSP DVD and located no images responsive to Plaintiff's narrowed request; however, other screenshots from the MSP DVD showing Adijat Edwards were provided in an effort to be of some assistance and to provide a representative sample of the videos found on that DVD. Additionally, although Stevens did not specifically request them, screenshots from the U.S. Bank DVD were also included with this release. With this second supplemental release 31 pages were released in full, 111 pages were released in part, 22 pages were withheld in full, and 84 pages were not provided because they were duplicates of records already processed. OIG

8

advised Stevens that FOIA exemptions (b)(5), (b)(6), (b)(7)(C) and (b)(7)(E) were invoked for the withheld materials. Ex. A at ¶¶16, 35; Ex. B. at ¶ 5; *see also* Ex. A at Ex. 11, OIG's second supplemental response.

**RESPONSE:** Disputed that Plaintiff narrowed her request for the MSP DVD.

25.     Additionally, at the request of USCIS, OIG's second supplemental response included USCIS-processed copies of the 11 pages of records originally referred to USCIS by the OIG. The OIG advised Stevens that FOIA exemptions (b)(6), (b)(7)(C) and (b)(7)(E) were invoked for the withheld materials. Ex. A at ¶ 17; *see also* Ex. A at Ex. 11.

**RESPONSE:** Undisputed.

26.     By email dated September 30, 2013, Stevens identified categories of records which she believed had not yet been produced by OIG, including: (1) logs of activity; (2) OIG interview notes; (3) "electric and non-electronic correspondence/messages/reports regarding the  Adijat Edwards allegation" as referenced in OIG's data request email to ICE which was provided  to plaintiff; (4) specific video from a DVD showing security video from the ICE Enforcement  and Removal Operations (ERO) property room (ICE-ERO DVD); (5) a screenshot from the MSP DVD showing a pat down and the best shot of Ms. Edwards' ankle; (6) images from MSP of all  transfers of an envelope and images from the Delta Airlines counter; and (7) ICE "breakdown of  the different camera views and time stamps" for the MSP DVD as referenced in an email document provided to plaintiff. Ex. A at ¶ 18; *see also* Ex. A at Ex. 12, email from Stevens.

**RESPONSE:** Undisputed.

27.     On October 21, 2013, after the FOIA unit returned from being furloughed as a result of the federal government shutdown, the OIG initiated its third search within the field  office to determine  whether  it maintained the additional categories of records identified in  Stevens' September 30, 2013 email. On October 22, 2013, the field office

notified the FOIA unit that it had reviewed the case file again to locate the specific items identified by Stevens, but that there were no additional responsive records. Also, during a telephone conversation on that day, the field office specifically advised the FOIA unit that the referenced breakdown of camera views and time stamps was not located. Ex. A at ¶¶ 36, 37.

**RESPONSE:** Undisputed.

28. By emails dated December 3, 6, and 8, 2013, OIG made a discretionary disclosure of additional information from Exhibit 19 of the ROI and other records provided in OIG's second supplemental response. Ex. A at ¶ 19; Ex. B. at ¶ 10; *see also* Ex. A at Ex. 13, emails from OIG counsel to Stevens' counsel, dated December 3, 6, and 8, 2013.

**RESPONSE:** Disputed that OIG had any discretion to withhold non-exempt, responsive agency records.

29. On January 21, 2014, Stevens alleged that four "Case Review Worksheets" were missing from OIG's production of responsive records and that the OIG did not search for and disclose all potentially responsive records existing within EDS. Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment at 6-8, Dkt. 23; *see also* Ex. A at ¶¶ 28, 38.

**RESPONSE:** Undisputed.

30. On January 24, 2014, although the OIG already produced two pages listing the dates of various case reviews, and one page providing details of an April 16, 2012 case review, it conducted a fourth search of the field office and located no additional case review records. Ex. A at ¶ 38.

**RESPONSE:** Undisputed.

31. On January 24, 2014, an OIG headquarters' Special Agent in Charge ("SAC") conducted an additional search of EDS by opening the following "tab" links

available on the main page of the EDS database record: initiation, people, staff, violations, dates, location of offense, notes, technical elements, disposition, significant investigative activity, upload documents, relate/consolidated records, log, MIR, collaterals, and ROI-action. The SAC located the following records maintained under those EDS tabs: (a) three pages from the "initiation" tab; (b) two pages from the "people" tab, including 14 pages of underlying information from that tab; (c) one page from the "staff" tab; (d) one page from the "violations" tab; (e) one page from the "dates" tab; (f) two pages consisting of different views from the "location of offense" tab; (g) one page from the "notes" tab; (h) one page from the "technical elements" tab; (i) one page from the "disposition" tab; (j) one page from the "significant investigative activity" tab; (k) two pages from the "upload documents" tab; (l) two pages from the "relate/consolidated records" tab; (m) eight pages from the "log" tab; (n) one page from the "MIR" tab; (o) one page from the "collaterals" tab; (p) one page from the "ROI-action" tab which also includes a note from the FOIA unit further identifying hard-to-read information on that page; (q) an 11-page EDS case summary report, available under the "reports" link, which condenses most of the information from the tabs into one report (there are no additional reports for this particular record available under that link); and (r) two additional documents located under the "upload documents" tab, one of which is not responsive to Stevens' request. Ex. A at ¶¶ 28, 30.

**RESPONSE:** Undisputed.

32.     With respect to the two additional documents located in EDS under the "upload documents" tab, the first document, named "FW 201104797 – EMPLOYEE UNKNOWN (A).msg," was produced to Stevens with the February 11, 2014 release of other additional EDS documents. The second document, entitled "MOA 24," and dated June 6, 2013, is not responsive to Steven' request because it was created after the date INV

completed its first search of EDS on April 4, 2013. MOA 24 was created by INV to correct a discrepancy in Exhibit 18 of the ROI, after the FOIA unit noticed the discrepancy during its review of records responsive to Stevens' FOIA request. The FOIA unit annotated the discrepancy on the ROI exhibit provided to Stevens; however, INV also created MOA 24 to explain this discrepancy. Because MOA 24 falls outside of OIG's search cutoff date for this request, OIG did not produce it to Stevens with the other EDS documents, but it is attached to the Kuehn declaration as a courtesy. Ex. A at ¶¶ 20, 28, 30; Ex. B at ¶ 11; *see also* Ex. A at Exs. 14, February releases from OIG to Stevens, and 15, June 10, 2013, memorandum of activity.

**RESPONSE:** Undisputed.

33.   The additional records located as a result of OIG's additional EDS search are administrative control records intended to track documents and related information maintained in the case file itself. As such, the OIG does not typically consider administrative EDS records as responsive to requests for particular investigative records. Additionally, although Stevens' FOIA request sought records which the special agent assigned to the investigation "created, received, or possessed about Adijat Edwards," because the EDS records are used as an administrative tracking tool, the OIG does not typically consider such records to be within an agent's possession. Ex. A at ¶ 31.

**RESPONSE:** The agency's interpretation of Plaintiff's request to exclude these records is disputed, but Plaintiff submits that this dispute is not material to the issues before the Court.

34.   On January 30, 2013, the FOIA unit initiated a fifth search of the field office. The field office mailed to the FOIA unit the entire original copy of the investigative case file. The original copy of the case file contained additional documents which the FOIA unit processed, including: (1) one page containing Ms. Edwards' fingerprint; (2) five pages

of handwritten notes; and (3) 55 pages of various additional records created by ICE. Ex. A at ¶ 39; Ex. B. at ¶ 18.

> **RESPONSE**: Undisputed.

35.     Also, the FOIA unit exercised its discretion, and as a courtesy to Stevens, expanded the scope of the search beyond what was originally requested by Stevens (*i.e.* that OIG produce everything created, received, or possessed by one specific case agent) and asked the field office to search the files of any employee likely to maintain records relating to the Edwards ROI. Ex. A at ¶ 40.

> **RESPONSE**: Disputed that this search was "a courtesy to Stevens" or an expansion of the scope of the original request, but Plaintiff submits this dispute is not material to the issues before the Court.

36.     In response to this fifth search of the field office, eight individuals conducted searches of their Outlook emails. Four individuals conducted a search of their emails using the search terms "Adijat Edwards," "Adijat," "Edwards," "I11-00486," and "Edwards I11-00486." Those four individuals located no records responsive to the request. Three individuals also conducted searches of their Outlook emails using the search terms "Adijat Edwards," "Adijat," "Edwards," "I11-00486," and "Edwards I11-00486." Those three individuals located additional responsive emails. Finally, another individual conducted a search of his Outlook emails using the search terms "Adijat Edwards," "Adijat," "Edwards," "I11-00486," "Edwards I11-00486," "Bloomington," and "IEA." This search included two additional search terms which were not used by others – "Bloomington," and IEA." These search terms were added because that individual determined these two additional search terms would help him to capture all responsive emails that exist in his Outlook account. This search did reveal additional responsive emails. Ex. A at ¶¶ 41-43.

**RESPONSE:** Undisputed.

37.    The additional records located as a result of this fifth search were not originally located because the field office previously only located emails saved in a designated Outlook file for the OIG's investigation of Ms. Edwards' allegations. The newly located records consisted of a few additional email messages and administrative emails circulating drafts of the ROI and its exhibits. Ex. A at ¶¶ 35, 44.

**RESPONSE:** Undisputed.

38.    As described in the next paragraph, all of the additional records located in

the field office as a result of the fifth search were processed by the FOIA unit and provided to Stevens or were referred to the ICE FOIA unit for processing and direct response to Stevens. Ex. A at ¶¶ 20, 45; Ex. B. at ¶ 11; *see also* Ex. A at Ex. 14.

**RESPONSE:** Undisputed.

39.    By emails dated February 10 and 11, 2014, OIG disclosed the additional records located within INV headquarters and the Chicago field office, with the exception of MOA 24, the document that the OIG considered not responsive to Stevens' request. Specifically, the February 10, 2014 email transmitted additional records located in the Chicago field office, and the February 11, 2014 email transmitted additional records located within OIG's investigative database (EDS). With these emails 23 pages were released in full, 97 pages were released in part to protect information protected by FOIA exemptions 6 and 7(C), and 28 pages were not provided because they were duplicates of records already processed. Additionally, 47 pages of records originating with ICE were referred to the ICE FOIA unit for processing and direct response to Stevens. Ex. A at ¶¶ 20, 30, 45; Ex. B. at ¶¶ 11-12; *see also* Ex. A at Ex. 14.

**RESPONSE:** Undisputed.

40.     The OIG FOIA unit initiated multiple searches within INV to locate all records responsive to Stevens' request that are maintained by OIG. Specifically, two searches at INV headquarters were conducted to locate an ROI and internal EDS tracking records. Additionally, five searches within the INV Chicago field office were conducted to locate numerous work papers responsive to Stevens' request. One of the EDS searches and four of the field office searches were initiated in response to issues raised by Stevens as a good faith effort to work with Stevens and ensure all responsive records were located. Ex. A at ¶ 26.

> **RESPONSE:** Disputed that the four subsequent searches conducted within the Chicago field officer demonstrate good faith.

41.     Overall, OIG released to Stevens 139 pages in full, 335 pages in part with limited redactions, and no pages were withheld in full. In accordance with her narrowed request, the OIG did not disclose the content of two DVDs, but disclosed representative screenshots from each DVD when it did not locate the specific screenshots requested by Stevens. To the extent that the requested screenshots were not provided, the FOIA unit reviewed the DVDs and the requested images do not appear on the DVDs. For its limited redactions, including those made on behalf of USCIS, the OIG relied on FOIA exemptions (b)(3), (b)(5), (b)(6), (b)(7)(C), and (b)(7)(E). OIG referred 180 pages and one DVD to ICE for processing and direct response to Stevens. Ex. A. at ¶¶ 16, 21; Ex. B. at ¶ 5; *see also* Exs. 5-11, 13, 14.

> **RESPONSE:** Disputed Plaintiff ever narrowed her request for the MSP DVD. Ex. 8 to Second Kuehn Decl. Dkt. 44-1 at 56.

42.     The MSP DVD initially responsive to Stevens' request was obtained from Minneapolis-St. Paul Airport and contains numerous videos of security footage of the airport. The entire DVD contains about one and a half hours of video from various

TSA security checkpoints within the airport. The videos showing Adijat Edwards are contained within a larger computer program consisting of numerous other non-responsive videos all stored on the MSP DVD. As further described in the Kuehn declarations, the OIG does not have the technical capability to segregate and/or redact video from the DVD. The contents of the videos showing Ms. Edwards, however, are summarized in Exhibit 19 of the ROI which was released to Stevens in OIG's Final Response dated July 3, 2013. Ex. A. at ¶ 49; Ex. B. at ¶ 5.

> **RESPONSE:** Disputed. As described in the third Kuehn Declaration, the OIG does have the technical capability to segregate and/or redact video from the DVD, it has simply made a decision not to provide that capability to its FOIA office. Disputed that the contents in the video are summarized in Exhibit 19 of the ROI, because the requested screenshots in Ex. 8 of the Second Kuehn Decl., 44-1 at 56, are exact correlations of the descriptions in Exhibit 19 of the ROI, and OIG claims no such images are on the video.

43.     By letter dated August 13, 2013, Stevens narrowed the scope of her request as it pertained to the MSP DVD to include only images showing the Delta Airlines ticket counter, including any image of Adijat Edwards holding a bank envelope. The FOIA unit reviewed the MSP DVD and located no images responsive to her narrowed request. By letter dated September 9, 2013, the OIG explained there were no images in the MSP DVD responsive to the descriptions specified; however, representative screenshots from the MSP DVD were provided. Ex. A. at ¶¶ 46, 48; Ex. B. at ¶¶ 5, 7; *see also* Ex. 8, letter from Stevens dated Aug. 13, 2013; Ex. 11.

> **RESPONSE:** Disputed. The referenced letter contains no agreement by Plaintiff to narrow her request regarding the MSP DVD. Ex. 8 to Second Kuehn Decl., letter from Stevens dated Aug. 13, 2013.

44.     Because Stevens narrowed the scope of the request to include only specific images from the MSP DVD that do not exist, OIG considers the entire MSP DVD non-responsive to the request. To the extent, however, the MSP DVD is considered to be responsive, OIG withheld it in full, relying on Exemption 3 of the FOIA and 49 U.S.C. § 114(r)(1)(C) to protect Sensitive Security Information ("SSI"), as well as Exemptions 6, (7)(C), and (b)(7)(E). Ex. A. at ¶¶ 46, 48; Ex. B. at ¶¶ 5, 7; *see also* Ex. 8, Letter from Plaintiff dated Aug. 13, 2013 and Ex. 11.

> **RESPONSE:** Disputed. The referenced letter contains no agreement by Plaintiff to narrow her request regarding the MSP DVD. Ex. 8 to Second Kuehn Decl., letter from Stevens dated Aug. 13, 2013.

45.     To determine whether the MSP DVD contained SSI, the OIG consulted with the TSA FOIA Office and the acting deputy of TSA's SSI Office. TSA advised the OIG that the responsive video was protected by subsections (b)(8)(i) and (b)(9)(i) of the SSI regulation, 49 C.F.R. §§ 1520.5, which protect security measures and screening procedures respectively. TSA advised OIG that these citations protect extended video of a security checkpoint, the release of which would allow individuals to identify certain patterns of airport security procedures and identify which locations within the airport those procedures are used. Ex. A at ¶ 50.

> **RESPONSE**: Disputed. The Minneapolis St. Paul Airport and the TSA have publicly announced the transition away from the video system at issue in this case to a newer, different program that does not use the same technology or vantage points. *See* http://www.startribune.com/business/151198495.html.

46.     The OIG withheld, pursuant to exemption 5, 5 U.S.C. § 552(b)(5), certain information protected by the deliberative process privilege. Specifically, the OIG relied on exemption 5 to protect small portions of the handwritten OIG interview notes. Ex. A at ¶ 51.

**RESPONSE:** Disputed that these withholdings are proper as a matter of law under any FOIA exemption, but undisputed that OIG claims it withheld such information under the claimed exemptions.

47.     Before applying the deliberative process privilege, OIG determined that the information was both "predecisional" and "deliberative." OIG determined that the protected information was created prior to the adoption of an agency decision, and contributed to the investigative decision-making process. OIG also determined that the protected information is deliberative in that it represents the investigators' opinions of information that correlates to the final investigative findings. Ex. A at ¶ 52.

**RESPONSE:** Disputed that these withholdings are proper as a matter of law under any FOIA exemption, but undisputed that OIG claims it withheld such information under the claimed exemptions.

48.     When conducting an investigation, OIG investigators gather information from witnesses, DHS components, and any outside entities or individuals that would maintain information of interest to the investigation. OIG investigators request documents and interviews with anyone who may have knowledge or expertise about the issues raised by the allegation. Information compiled and created by OIG investigators during the course of the above work are considered to be "OIG workpapers." *Id.* at ¶¶ 53-54.

**RESPONSE:** Disputed that these withholdings are proper as a matter of law under any FOIA exemption, but undisputed that OIG claims it withheld such information under the claimed exemptions.

49.     The OIG withheld, pursuant to exemption 5 (deliberative process privilege), small portions of handwritten notes memorializing a witness interview conducted by an OIG investigator during the course of the investigation. OIG determined that the withheld portion of the witness interview notes is pre-decisional and deliberative, and OIG contends

that these notes reflect the preliminary thinking of the authors, rather than final assertions and statements contained in the final OIG report. *Id.* at ¶¶ 51, 56.

> **RESPONSE:** Disputed that these withholdings are proper as a matter of law under any FOIA exemption, but undisputed that OIG claims it withheld such information under the claimed exemptions.

50. The Kuehn declaration states that the OIG applied exemption 6, in conjunction with exemption 7(C), to protect the names of third parties, including lower-level OIG employees (including OIG investigators), other federal employees, and private citizens, as well as personally identifiable direct telephone numbers, e-mail addresses, images, handwriting and other identifying information (including direct quotations and certain actions of individuals that would allow someone familiar with the situation to identify those individuals). *Id.* at ¶¶ 59-61.

> **RESPONSE:** Undisputed that the Kuehn declaration states this. Disputed that the withholdings are proper as applied to Documents 1a, Dkt. 37-4, 1c, Dkt. 37-5, 1d, Dkt. 37-6, 1p, Dkt. 37-7, 20, Dkt. 37-8, and 33, Dkt. 37-9.

51. The OIG also relied on exemption 7(E) to protect certain information from law enforcement records maintained by INV. *Id.* at ¶¶ 62-63.

> **RESPONSE:** Disputed that these withholdings are proper as a matter of law under any FOIA exemption, but undisputed that OIG claims it withheld such information under the claimed exemptions.

52. Kuehn attested that after determining that the responsive OIG investigative records meet exemption 7's threshold requirement for law enforcement records, OIG then determined that certain information qualified for protection under Exemptions 7(C) and 7(E). *Id.* at ¶ 64.

> **RESPONSE:** Undisputed that Kuehn makes this attestation. Disputed that the

withholdings are proper as applied to Documents 1a, Dkt. 37-4, 1c, Dkt. 37-5, 1d, Dkt. 37-6, 1p, Dkt. 37-7, 20, Dkt. 37-8, and 33, Dkt. 37-9.

53.    The OIG protected, pursuant to exemption 7(C), and at times in conjunction with exemption 6, the names and identifying information of OIG special agents and investigative support employees referenced in the investigative records. This information consists of the employees' names, e-mail addresses and other personally identifiable information, such as direct quotes and identifying actions. *Id.* at ¶ 67.

> **RESPONSE:** Disputed that these withholdings are proper as a matter of law under any FOIA exemption, but undisputed that OIG claims it withheld such information under the claimed exemptions.

54.    Exemption 7(C) has also been asserted, in conjunction with exemption 6, to protect the names and identifying information, including handwriting, pictures and identifying actions of other third parties referenced in the investigatory records – witnesses, private citizens, and other non-OIG federal government employees. *Id.* at ¶¶ 68-69.

> **RESPONSE:** Undisputed that this exemption has been asserted. Disputed that it is proper as a matter of law when applied to the documents in Dkt Nos. 37-3 through 37-9.

55.    The OIG protected, pursuant to exemption (7)(E), details about the operation of video surveillance cameras at a specific airline ticket counter and certain details about the availability of information obtained by that method of surveillance at the MSP airport. *Id.* at ¶ 71.

> **RESPONSE:** Disputed that this withholding was proper as a matter of law, and that no portion of the video is reasonably segregable.

56.    The OIG also invoked exemption 7(E), in conjunction with exemption 3, to protect the full MSP DVD, specifically security measures and screening procedures visible on the DVD. Upon consultation, TSA advised OIG that the release of extended video of a

security checkpoint, would allow individuals to identify certain patterns of airport security procedures and identify which locations within the airport those procedures are used. Also, the OIG invoked Exemption 7(E) to protect the login information necessary for accessing the video security system that was copied onto the MSP DVD. *Id.* at ¶¶ 46, 72, 73.

> **RESPONSE:** Disputed that these withholdings are proper as a matter of law under any FOIA exemption, but undisputed that OIG claims it withheld such information under the claimed exemption.

57.     While processing records for its final response and two supplemental responses to Stevens, OIG conducted consultations with TSA, ICE and USCIS regarding certain information within the documents of interest to those entities. In accordance with those consultation, the OIG redacted information pursuant to exemptions 3, 6, 7(C), and 7(E), as described above. *Id.* at ¶¶ 17, 21, 50, 73, 74, 75.

> **RESPONSE:** Disputed that these withholdings are proper as a matter of law under any FOIA exemption, but undisputed that OIG claims it withheld such information under the claimed exemption.

58.     The OIG reviewed all responsive records to determine whether any portion of the records could be segregated as nonexempt and disclosed. The OIG has disclosed to Stevens all reasonably segregable, nonexempt information. *Id.* at ¶ 76; Ex. B. at ¶ 13.

> **RESPONSE:** Disputed as a matter of law as to the documents in Dkt. Nos. 37-4 through 37-9 and each DVD withheld in full.

Date: September 5, 2014                    Respectfully submitted,


                                           s/ R. Andrew Free
                                           R. Andrew Free
                                           Law Office of R. Andrew Free
                                           Bank of America Plaza
                                           414 Union Street, Suite 900
                                           Nashville, Tennessee 37219
                                           (615) 244-2202
                                           Andrew@ImmigrantCivilRights.com
                                           **Attorney for Plaintiff**

**Local Counsel:**

        Mark M. Fleming
        208 S. LaSalle St., Suite 1300
        Chicago, IL 60604


                    **CERTFICATE OF SERVICE**

        I hereby certify that I have served a true and correct copy of the foregoing *Plaintiff's Response to Defendant's Statement of Material Facts* and all attachments thereto upon counsel listed below via this Court's CM/ECF system on today's date, September 5, 2014.

        Abigail L. Peluso
        Assistant United States Attorney
        219 South Dearborn Street
        Chicago, Illinois 60604

Date: September 5, 2014            /R. Andrew Free
                                   R. Andrew Free