# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

JACQUELINE STEVENS,       )
)
       **Plaintiff,**       )
)       **No. 13 C 03382**
       **v.**       )
)       **Chief Judge Rubén Castillo**
UNITED STATES DEPARTMENT OF       )
HOMELAND SECURITY,       )
)
       **Defendant.**       )

## MEMORANDUM OPINION AND ORDER

Plaintiff Jacqueline Stevens, a professor of political science at Northwestern University and director of the university's Deportation Research Clinic, brings this action under the Freedom of Information Act ("FOIA" or "the Act"), 5 U.S.C. § 552 *et seq.*, seeking documents and digital records from the United States Department of Homeland Security ("DHS") and its component Office of the Inspector General ("OIG"). (R. 1, Compl. ¶ 1.) DHS contends that the documents Stevens seeks fall under FOIA Exemptions 3, 5, 6, 7(C), and 7(E). 5 U.S.C. §§ 552(b)(3), (6), (7)(C), (7)(E). Presently before the Court are the parties' cross-motions for summary judgment. (R. 36, Stevens' Mot.; R. 45, DHS's Mot.) For the reasons stated below, DHS's motion for summary judgment is granted in part and denied in part, and Stevens' partial motion for summary judgment is granted in part and denied in part.

# BACKGROUND[1]

DHS is the federal agency responsible for enforcing United States immigration laws. (R. 51, Stevens' Rule 56.1 Resp. ¶ 1.) OIG is a component of DHS, but operates independently of DHS and all offices within it. (*Id.* ¶ 2.) OIG is responsible for conducting and supervising audits and investigations relating to DHS programs and operations. (*Id.*) Stevens' FOIA request stems from her research into allegations of misconduct by U.S. Immigration and Customs Enforcement ("ICE") agents during the deportation of Adijat Edwards, a Nigerian citizen.

On February 8, 2011, Edwards was deported through an expedited removal process to Nigeria from the United States by ICE, also a component of DHS. (*Id.* ¶ 4.) As part of Stevens' work at the Deportation Research Clinic, she learned that Edwards had accused ICE agents in Minnesota of stealing $1,200.00 in cash and several pieces of jewelry while she was an ICE detainee. (R. 44, DHS's Rule 56.1 Resp. ¶ 4.)

On March 20, 2013, Stevens submitted to OIG via e-mail a FOIA request seeking all records pertaining to Edwards that were created, received, or possessed at any time by a special agent in the OIG Chicago field office tasked with investigating Edwards' complaint. (R. 51, Stevens' Rule 56.1 Resp. ¶ 6.) The request included a privacy waiver from Edwards consenting to release of these records to Stevens. (*Id.*) On March 28, 2013, OIG notified Stevens that it had received her FOIA request. (*Id.* ¶ 7.) OIG also advised that while it expected to respond to her request within 20 business days, the actual time required to respond depended on how many responsive records were located and the types of records identified in the search. (*Id.*)

---

[1] The Court takes the undisputed facts from the parties' Local Rule 56.1 Statements. (R. 38, Stevens' Local Rule 56.1 Statement of Material Facts ("Stevens' Facts"); R. 46, DHS's Local Rule 56.1 Statement of Material Facts ("DHS's Facts"); R. 51, Stevens' Local Rule 56.1 Resp. to DHS's Local Rule 56.1 Statement of Material Facts ("Stevens' Rule 56.1 Resp."); R. 44, DHS's Local Rule 56.1 Resp. to Stevens' Local Rule 56.1 Statement of Material Facts ("DHS's Rule 56.1 Resp.").)

## I.     OIG's First Search

That same day, OIG initiated a search within its Office of Investigations ("INV"), which was the office that OIG determined was most likely to maintain records responsive to Stevens' FOIA request. (*Id.* ¶ 8.) The management analyst assigned to conduct FOIA searches for INV searched the electronic database known as "EDS," which is the sole records repository and management system used to track allegations received and adjudicated, and investigations initiated. (*Id.*) On April 4, 2013, the management analyst performed a search that recovered a report of investigation ("ROI") that contained an investigative summary and 20 exhibits, which the analyst subsequently turned over to OIG's FOIA Unit. (*Id.* ¶ 9.) On April 30, 2013, Stevens submitted via e-mail an administrative appeal to OIG, claiming constructive denial of her FOIA request, (*id.* ¶ 10). OIG acknowledged her appeal in a letter to Stevens on May 7, 2013. (*Id.*). On May 6, 2013, Stevens filed her complaint in the instant action, seeking declaratory and injunctive relief to compel DHS' disclosure of records. (*Id.* ¶ 11.)

OIG provided Stevens its first response to her FOIA request on June 5, 2013, which included the ROI's 8-page investigative summary. (*Id.* ¶ 12.) Two pages of the investigative summary were released unredacted and six pages were released in redacted form based upon OIG's determination that the redacted portions fell under Exemptions (b)(6) and (b)(7)(C) of the Act. (*Id.*)

## II.    OIG's Second Search

On June 6, 2013, the FOIA Unit e-mailed the management analyst to ensure that a thorough search for all responsive records was conducted within INV, including the Chicago field office. (*Id.* ¶ 13.) On June 11 and 12, 2013, the OIG FOIA Unit e-mailed the Chicago field office directly to request that the field office provide the FOIA Unit with all additional

responsive documents, including e-mails and other records. (*Id.* ¶ 14.) The field office e-mailed the OIG FOIA Unit with the records on June 12, 2013. (*Id.*) The field office also notified the OIG FOIA Unit at that time that copies of three responsive DVDs were mailed to the OIG FOIA Unit, and indicated that all records responsive to the request had now been provided. (*Id.*)

OIG provided Stevens with what it termed its "final response" to her FOIA request on July 3, 2013. (*Id.* ¶ 15.) This response included releaseable portions of all 20 ROI exhibits, as well as other records obtained from the Chicago field office. (*Id.*) OIG released 71 unredacted pages, 70 redacted pages, and withheld seven pages and two DVDs in full. (*Id.*) OIG advised Stevens that it withheld information pursuant to FOIA Exemptions 3, 6, and 7(C). (*Id.*) Additionally, OIG disclosed additional information from the ROI investigative summary that was originally withheld in OIG's first search. (*Id.*) OIG also notified Stevens that, pursuant to DHS regulations, the agency had referred 75 pages of responsive records and one responsive DVD to ICE to determine whether the materials were exempt from disclosure. (*Id.* ¶ 16.) ICE subsequently reviewed the video files, and in a letter dated June 27, 2013, the agency informed Stevens that portions of the video were exempt from disclosure pursuant to FOIA Exemptions 6, 7(C), and 7(E). (*Id.* ¶ 17.) Stevens' counsel raised concerns about the adequacy of OIG's search and also challenged the OIG's withholding of certain information pursuant to FOIA Exemptions 6 and 7(C). (*Id.* ¶ 18.)

## III.    OIG's Third Search

OIG initiated a new search within the Chicago field office on July 31, 2013. (*Id.* ¶ 19.) The field office copied Edwards' entire case file, and provided the FOIA Unit with records from the file. (*Id.*) The DVDs included footage of ICE agents escorting Edwards to a ticket counter at the Minneapolis-St. Paul Airport during her removal (the "Airport DVD"), as well as the agents

escorting Edwards to a U.S. Bank ATM to retrieve funds for her plane ticket to Nigeria (the "U.S. Bank DVD"), the funds which Edwards alleges the agents later stole. (*Id.* ¶ 20; R. 50-1, Stevens Suppl. Decl. ¶ 4.) In a letter dated August 13, 2013, Stevens agreed to narrow her FOIA request by agreeing to OIG's withholding of the U.S. Bank DVD. (R. 51, Stevens' Rule 56.1 Resp. ¶ 20.) On August 29, 2013, OIG provided Stevens with additional records from the Chicago field office investigative file, as well as transcribed copies of previously withheld handwritten statements. (*Id.* ¶ 21.) OIG released 26 additional pages—two unredacted and 24 redacted pages—and advised Stevens that the withheld information fell under Exemptions 5, 6, and 7(C). (*Id.*) OIG also referred 11 pages of records to the DHS U.S. Citizenship and Immigration Services ("USCIS"), and 58 pages of records to ICE for processing and direct response to Stevens. (*Id.*) ICE subsequently released all 58 pages of the referred documents to Stevens in unredacted form. (*Id.* ¶ 22.) The OIG also disclosed additional information from ROI Exhibits 6-8 and 10. (*Id.* ¶ 23.)

On September 9, 2013, the OIG provided Stevens with what it believed to be the remaining responsive records maintained at the Chicago field office. (*Id.* ¶ 24.) The OIG notified Stevens that it had reviewed the Airport DVD and located no images responsive to Plaintiff's request; however, other screenshots from the Airport DVD showing Edwards were provided as a representative sample of the videos found on that DVD. (*Id.*) Additionally, the OIG disclosed screenshots from the U.S. Bank DVD. (*Id.*) With this second supplemental release, 31 unredacted pages and 111 redacted pages were disclosed, and 22 pages were withheld. (*Id.*) The OIG determined that the withheld information fell under FOIA Exemptions 5, 6, 7(C), and 7(E). (*Id.*) At the request of USCIS, OIG's second supplemental response included USCIS-processed copies of the 11 pages of records originally referred to USCIS by the

OIG. (*Id.* ¶ 25.) The OIG advised Stevens that FOIA Exemptions (b)(6), (b)(7)(C), and (b)(7)(E) were invoked for the withheld materials. (*Id.*)

## IV. OIG's Fourth Search

In an e-mail dated September 30, 2013, Stevens identified categories of records which she believed had not yet been produced by OIG, including: (1) logs of activity; (2) OIG interview notes; (3) electric and non-electronic correspondence/messages/reports regarding the Edwards investigation; (4) specific video from a DVD showing security video from the ICE enforcement and removal operations property room (the "ICE Facility DVD"); (5) a screenshot from the Airport DVD showing a pat down and the best shot of Edwards' ankle; (6) images from the Airport DVD of all transfers of an envelope and images from the Delta Airlines counter; and (7) a breakdown of the different camera views and time stamps for the Airport DVD. (*Id.* ¶ 26.) On October 21, 2013, after employees from the FOIA Unit returned from being furloughed as a result of the federal government shutdown, the OIG initiated another search within the field office to determine whether it maintained the additional categories of records identified in Stevens' September 30, 2013 request. (*Id.* ¶ 27.) The Chicago field office notified the FOIA Unit that it had reviewed the case file again, but was unable to locate the specific items identified by Stevens' new request. (*Id.*) The OIG also disclosed additional information from Exhibit 19 of the ROI and other records provided in OIG's second supplemental response. (*Id.* ¶ 28.)

## V. OIG's Final Searches

On January 24, 2014, the OIG conducted another search of the field office in response to an allegation by Stevens that case review records were missing from OIG's previous disclosures; however, no additional case review records were found. (*Id.* ¶ 30.) The OIG headquarters' special agent in charge performed an in-depth search of EDS that recovered administrative

control records, which are intended to track documents and related information maintained in the case file. (*Id.* ¶ 33.) OIG did not consider these records responsive to Stevens' FOIA request because she sought records from a specific agent tasked with investigating Edwards' complaint, whereas administrative control records are a tracking tool not typically considered to be records within an agent's possession. (*Id.*)

On January 30, 2013, the FOIA Unit initiated a new search of the field office. (*Id.* ¶ 34.) The field office mailed to the FOIA Unit the entire original copy of the investigative case file. The original copy of the case file contained additional documents which the FOIA Unit processed, including: (1) one page containing Edwards' fingerprint; (2) five pages of handwritten notes; and (3) 55 pages of various additional records created by ICE. (*Id.*) The FOIA Unit also expanded its search, requesting that the field office search the files of any employee likely to maintain records relating to the Edwards investigation. (*Id.* ¶ 35.) Eight employees conducted searches of their e-mail accounts, and four individuals located pertinent documents. (*Id.* ¶ 36.) These new documents were processed by the FOIA Unit and provided to Stevens, or were referred to the ICE FOIA Unit for processing and direct response to Stevens. (*Id.* ¶ 38.) From this latest search, Stevens received 23 unredacted pages of records and 97 pages redacted to protect information pursuant to FOIA Exemptions 6 and 7(C); 47 pages of records were referred to the ICE FOIA Unit for further consideration. (*Id.* ¶ 39.)

In total, two searches at OIG's Washington headquarters were conducted to locate an ROI and internal EDS tracking records. (*Id.* ¶ 40; R. 44, DHS's Rule 56.1 Resp. ¶ 7.) Additionally, five searches were conducted at the Chicago field office to locate numerous records responsive to Stevens' request. (R. 51, Stevens' Rule 56.1 Resp. ¶ 40.) One of the EDS searches and four of the field office searches were initiated in response to issues raised by

Stevens. (*Id.*) Overall, OIG released to Stevens 139 unredacted pages and 335 redacted pages; no documents were withheld in full. (*Id.* ¶ 41.) For its redactions, including those made on behalf of USCIS, the OIG relied on FOIA Exemptions 3, 5, 6, 7(C), and 7(E). (*Id.*) In addition, the OIG did not disclose the content of two DVDs, but disclosed representative screenshots from each DVD when it did not locate the specific screenshots requested by Stevens. (*Id.*) To the extent that the requested screenshots were not provided, the FOIA Unit reviewed the DVDs and the requested images do not appear on the DVDs. (*Id.*) The OIG referred 180 pages and one DVD to ICE for processing and direct response to Stevens. (*Id.*)

## VI.    Current Litigation

On July 14, 2014, Stevens filed her motion for partial summary judgment, requesting a judgment that DHS has violated FOIA by: (1) failing to conduct an adequate search; and (2) improperly withholding (a) responsive agency records of video, or reasonably segregable portions thereof, on a DVD that OIG referred to ICE, (b) reasonably segregable portions of the Airport DVD, and (c) reasonably segregable portions of responsive agency records on six partially disclosed documents. (R. 36, Stevens' Mot.) On August 11, 2014, DHS filed its cross-motion for summary judgment, arguing that OIG conducted reasonable searches in response to Stevens' FOIA request, and that it has not improperly withheld agency records. (R. 47, DHS's Mem. at 1.) To support its motion, DHS submits declarations from Stephanie L. Kuehn, a Senior FOIA Specialist at OIG, (R. 44-1, Ex. A, Kuehn Decl.; R. 44-2, Ex. B, Suppl. Kuhen Decl.), and Fernando Pineiro, Deputy FOIA Officer at ICE, (R. 44-3, Ex. C, Pineiro Decl.). DHS also submits a *Vaughn* index, (R. 44-2, Ex. 1b, *Vaughn* Index), which "is a comprehensive listing of each withheld document cross-referenced with the FOIA exemption that the Government asserts

is applicable." *Solar Sources, Inc. v. United States*, 142 F.3d 1033, 1036 n.3 (7th Cir. 1998) (citing *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973)).

## LEGAL STANDARDS

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a genuine issue of material fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001). "On cross-motions for summary judgment, [a court] construe[s] all facts and inferences therefrom in favor of the party against whom the motion under consideration was made." *Five Points Road Joint Venture v. Johanns*, 542 F.3d 1121, 1124 (7th Cir. 2008).

Because disclosure is the "dominant objective" of FOIA, the Court narrowly construes FOIA Exemptions. *Patterson v. Internal Revenue Serv.*, 56 F.3d 832, 835 (7th Cir. 1995); *see also U.S. Dep't of Justice v. Landano*, 508 U.S. 165, 181 (1993). As such, the government agency has the burden to support its decision to deny the FOIA request. *Patterson*, 56 F.3d at 836. The court must determine *de novo* whether the government has satisfied its burden. 5 U.S.C. § 552(a)(4)(B). In doing so, the court must give "meaningful reach and application" to the exemptions while also taking care to construe them narrowly, given the Act's general policy of disclosure. *Solar Sources*, 142 F.3d at 1037 (7th Cir. 1998) (internal citations omitted). Because FOIA cases usually involve only a dispute over how the law is applied to the withheld records, rather than any factual dispute, whether the government is justified in invoking an exemption is typically decided at the summary judgment phase. *See, e.g., id.* at 1036; *Wright v.*

*Occupational Safety & Health Admin.*, 822 F.2d 642, 644 (7th Cir. 1987). The Court may grant summary judgment in favor of the agency in a FOIA case "only if 'the agency affidavits describe the documents withheld and the justifications for nondisclosure in enough detail and with sufficient specificity to demonstrate that material withheld is logically within the domain of the exemption claimed.'" *Patterson*, 56 F.3d at 836 (quoting *PHE, Inc. v. U.S. Dep't of Justice*, 983 F.2d 248, 250 (D.C. Cir. 1993)).

**ANALYSIS**

## I.    Whether DHS conducted an adequate search

Stevens first argues that Kuehn's declaration fails to provide sufficient detail about the search methodologies employed by OIG in responding to Stevens' FOIA request. (R. 40, Stevens' Am. Mem. at 3-6.) Specifically, Stevens argues that the declaration fails to account for why the OIG's initial search of its Washington headquarters does not appear in the EDS log, and fails to address why searches of the Chicago field office did not yield known, responsive documents. (*Id.*) DHS argues that its cumulative searches demonstrate that it conducted an adequate search that was reasonably calculated to locate all responsive documents. (R. 47, DHS's Mem. at 4.)

When evaluating the adequacy of DHS's search, "[t]he issue is *not* whether other documents may exist, but rather whether the search for undisclosed documents was adequate." *Becker v. Internal Revenue Serv.*, 34 F.3d 398, 406 (7th Cir. 1994); *see also Morley v. Cent. Intelligence Agency*, 508 F.3d 1108, 1120 (D.C. Cir. 2007) ("failure of an agency to turn up one specific document in its search does not alone render a search inadequate"). "The adequacy of the document search is judged under a reasonableness standard. The agency may rely on reasonably detailed nonconclusory affidavits submitted in good faith to support their claims of

compliance." *Becker*, 34 F.3d at 406. "A satisfactory agency affidavit should, at a minimum, describe in reasonable detail the scope and method by which the search was conducted." *Maynard v. Cent. Intelligence Agency*, 986 F.2d 547, 559 (1st Cir. 1993) (citing *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)); *see also Morley*, 508 F.3d at 1122 (finding an affidavit inadequate for not "identifying the terms searched or explaining how the search was conducted in each component" and not providing "any indication of what each directorate's search specifically yielded" (internal alterations omitted) (quoting *Oglesby*, 920 F.2d at 68)).

In the instant case, the Court has reviewed the declarations and finds that they describe DHS's search in sufficient detail, and none of the alleged defects that Stevens observes in the declarations undermine the adequacy of the agency's search. The Court addresses each of Stevens' arguments in turn. First, Stevens argues that Kuehn's initial declaration fails to address why a management analyst's search of EDS for responsive records on March 28, 2013 is not listed in the EDS activity log provided to Stevens. (R. 40, Stevens' Am. Mem. at 4.) In her supplemental declaration, Kuehn clarifies that the search was initiated on March 28, 2013, which means that the FOIA Unit formally requested that INV conduct a search for responsive records on that date. (R. 44-2, Ex. B, Kuehn's Supplemental Decl. ¶ 14.) Therefore, a search was not actually conducted on March 28, 2013, which explains why the log does not denote a search on that date. Kuehn further attests that the analyst conducted the search on April 4, 2013. (*Id.*) Kuehn explains that the EDS activity log does not show the analyst's search because when the search was undertaken EDS did not log when searchers simply viewed a record, rather it only tracked use of the "edit" or "delete" actions. (*Id.* ¶15.) Kuehn attests that the "view record" action was not introduced until Ocotber 2013, six months after the analyst's search. (*Id.*) Thus,

DHS has provided a sufficient explanation for the discrepancy between the activity log and the search efforts detailed in Kuehn's first declaration.

Second, Kuehn argues that DHS's search is inadequate because the agency has not accounted for why its initial searches did not contain information from the case file that was eventually produced after subsequent searches. (R. 40, Stevens' Am. Mem. at 4.) The U.S. Court of Appeals for the Seventh Circuit has held, however, that a search's failure to turn up documents does not necessarily render it inadequate. *See Becker*, 34 F.3d at 406. In addition, courts have repeatedly held that an agency's remedial efforts to find responsive documents is evidence of good faith, and does not prove a search was inadequate. *See Maynard*, 986 F.2d at 565 (finding that the CIA's subsequent discovery and release of a lost file does not "impugn[] the integrity" of its search and suggests good faith on the part of the agency); *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 489 (2d Cir. 1999) (finding that the fact "[t]hat some documents were not discovered until a second, more exhaustive, search" does not render a search inadequate); *Meeropol v. Meese*, 790 F.2d 942, 952-53 (D.C. Cir. 1986) (holding that "a search is not unreasonable simply because it fails to produce all relevant material[,]" as "[i]t would be unreasonable to expect even the most exhaustive search to uncover every responsive file; what is expected of a law-abiding agency is that it admit and correct error when error is revealed."); *Nat'l Inst. of Military Justice v. U.S. Dep't of Defense*, 404 F. Supp. 2d 325, 333-34 (D.D.C. 2005) (finding that the agency's lack of diligence in its initial search does not by itself demonstrate bad faith, "especially in light of the subsequent efforts to search for responsive records once the parties engaged in discussions about the specific type of documents the plaintiff was seeking). Here, DHS went to great lengths to address the concerns Stevens expressed regarding the initial search results, and eventually located many of the documents she sought.

DHS conducted seven searches and released 139 unredacted and 335 redacted pages of records to Stevens, along with screenshots from two DVDs. (R. 51, Stevens' Rule 56.1 Resp. ¶ 41.) The Court views DHS's remedial searches as a good-faith effort to work with Stevens and to provide all non-exempt documents responsive to her request. It is inevitable that a search may fail to find every single responsive document, but FOIA does not require such a high standard—"a search need not be perfect, only adequate." *Meeropol*, 790 F.2d at 956. Consequently, the Court finds that DHS's conducted an adequate search for responsive records.

Seeking to avoid this result, Stevens argues that in this instance, multiple searches are not evidence of agency good faith because she, rather than DHS, first raised the deficiencies of the initial search efforts. (R. 50, Stevens' Reply at 3.) Stevens fails to cite to any case law demonstrating that the adequacy of an agency's search turns on the agency alerting the plaintiff to the shortcomings of its initial search efforts. Rather, the case law demonstrates that it is the agency's actions to rectify the failings of the initial search that demonstrate an adequate search was performed. *See Meeropol*, 790 F.2d at 952-53. Therefore, the Court concludes that it is immaterial that Stevens first raised the deficiencies of DHS's initial search efforts. Stevens also argues that DHS intentionally failed to produce responsive documents to conceal potential misconduct by its personnel in its handling of the Edwards investigation. (R. 50, Stevens' Reply at 2.) Stevens offers no evidence to substantiate her claim, nor does she include the allegation in her declarations to the Court. The Seventh Circuit has found that "the mere allegation of bad faith does not undermine the sufficiency of agency submissions. There must be tangible evidence of bad faith; without it the court should not question the veracity of agency submissions." *Silets v. U.S. Dep't of Justice*, 945 F.2d 227, 231 (7th Cir. 1991) (quoting *Carter v. U.S. Dep't of Commerce*, 830 F.2d 388, 393 (D.C. Cir. 1986) (internal alterations omitted)).

Accordingly, Stevens has failed to raise a genuine issue of fact regarding intentional concealment by DHS.

Finally, Stevens argues that DHS's inability to locate a document containing a breakdown of video time frames in which Edwards appears inside the Minneapolis airport is evidence of the agency's inadequate search. (R. 40, Stevens' Am. Mem. at 5.) DHS acknowledges that it cannot locate the document despite numerous searches. (R. 47, DHS's Mem. at 7; R. 44-1, Ex. A, Kuehn Decl. ¶ 37.) The Court reiterates that the existence of an undisclosed document does not render a search inadequate. *See Becker*, 34 F.3d at 406; *Roberts v. U.S. Dep't of Justice*, CIV. A. No. 92–1707(NHJ), 1995 WL 356320, at *2 (D.D.C. Jan. 29, 1993) ("Nothing in the law requires the agency to document the fate of documents it cannot find. If a reasonable search fails to unearth a document, then it makes no difference whether the document was lost, destroyed, stolen, or simply overlooked.") DHS has engaged in reasonable efforts to search for this document, including a review of the original case file from the field office, and its inability to produce the video breakdown is not reflective of an inadequate search.

In summary, the Court rejects Stevens' arguments regarding the inadequacy of DHS's search. In addition, Kuehn's declarations provide sufficient detail regarding the scope and method of the agency's search. Accordingly, the Court finds that DHS conducted an adequate search for records responsive to Stevens' request.

## II.     Whether DHS properly redacted six specific documents

Stevens next argues that DHS fails to justify the agency's redaction of six specific documents: Document 1a, R. 37-4, ROI Synopsis; Document 1c, R. 37-5, Telephone Interview Summary; Document 1d, R. 37-6, Personal Interview Notes 1; Document 1p, R. 37-7, Personal

Interview Notes 2; Document 20, R. 37-8, Telephone Contact; Document 33, R. 37-9, Handwritten Notes (collectively, "the Six Documents"). (R. 40, Stevens' Am. Mem. at 9.)

In the Six Documents, DHS withheld the personal information of OIG employees and other third parties under Exemptions 6 and 7(C). (R. 47, DHS's Mem. at 13; R. 44-2, Ex. 1b, *Vaughn* Index.) Specifically, OIG redacted the names, email addresses and other personally identifiable information of OIG employees, as well as the names and identifying information, including handwriting, pictures and identifying actions of witnesses, private citizens and other non-OIG federal government employees. (R. 44-1, Ex. A, Kuehn Decl. ¶¶ 67-68.) Exemptions 6 and 7(C) protect against disclosure of information that would result in an unwarranted invasion of personal privacy. 5 U.S.C. §§ 552(b)(6), (b)(7)(C). Exemption 7 shelters "records or information compiled for law enforcement purposes," when the production of the information may result in one of six enumerated harms. 5 U.S.C. § 552(b)(7)(A)-(F). Thus, the withholding agency must prove both the threshold law enforcement purpose plus the danger that at least one of the specified harms may result from disclosure. *See Federal Bureau of Investigation v. Abramson*, 456 U.S. 615, 622 (1982). FOIA Exemption 7(C) permits the withholding of documents that were compiled for law enforcement purposes where release "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). Exemption 6 states that FOIA does not apply to matters that are "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Although similar, "Exemption 7(C) is more protective of privacy than Exemption 6: The former provision applies to any disclosure that could reasonably be expected to constitute an invasion of privacy that is unwarranted, while the latter bars any disclosure that would constitute an invasion of privacy that is clearly unwarranted." *U.S. Dep't*

of Defense v. Fed. Labor Relations Auth., 510 U.S. 487, 496 n.6 (1994) (internal quotation marks omitted). Therefore, if DHS can establish that the material was compiled for law enforcement purposes, it must satisfy only the lower withholding standard contained in Exemption 7(C). *See Patterson*, 56 F.3d at 838-39.

"An agency's investigation of its own employees is for 'law enforcement purposes' only if it focuses 'directly on specifically alleged illegal acts, acts which could, if proved, result in civil or criminal sanctions.'" *Patterson*, 56 F.3d at 837 (quoting *Stern v. Federal Bureau of Investigation*, 737 F.2d 84, 89 (D.C. Cir. 1984) (internal alterations omitted)). Here, it is readily apparent that the records withheld by DHS based on Exemption 7(C) qualify as law enforcement records, and Stevens does not argue otherwise. Specifically, OIG was investigating a complaint by Edwards that DHS employees stole her property and thereby violated federal criminal law. (R. 44-1, Ex. A, Kuehn Decl. ¶¶ 62-69.) Accordingly, DHS has established that its investigation was for law enforcement purposes.

Next, the Court must address whether disclosure of the withheld information "could reasonably be expected to constitute an unwarranted invasion of the personal privacy of third parties or Service personnel." 5 U.S.C. § 552(b)(7)(C). In answering this question, "a court must balance the public interest in disclosure against the interest Congress intended the Exemption to protect." *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 776 (1989). The Court must weigh the interest in protecting the names and identifying information of OIG employees and other third parties referenced in the investigative records with "the only relevant public interest in the FOIA balancing analysis—the extent to which disclosure of the information sought would 'shed light on an agency's performance of its statutory duties'

or otherwise let citizens know 'what their government is up to.'" *Fed. Labor Relations Auth.*, 510 U.S. at 497 (quoting *Reporters Comm.*, 489 U.S. at 773) (internal alterations omitted).

OIG employees have an interest in maintaining the privacy of their personal information, such as their names and home addresses. *See U.S. Dep't of Navy v. Fed. Labor Relations Auth.*, 975 F.2d 348, 353 (7th Cir. 1992). Where a legitimate privacy interest is implicated, the requester must "show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake . . . [and] show the information is likely to advance that interest." *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004). Here, Stevens has not demonstrated any public interest in securing the information, let alone a significant one. While Stevens may wish to possess this information as part of her research, the Supreme Court has held that FOIA's purpose "is not fostered by disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct." *Reporters Comm.*, 489 U.S. at 773. The Court cannot discern the significant public interest that would be advanced by revealing this private information, and Stevens has failed to meet her burden in asserting such an interest. Thus, the Court finds that the withheld information would be an unwarranted invasion of personal privacy. Based upon this finding, the Court concludes that DHS properly redacted the Six Documents to protect private OIG employee information.

Seeking to avoid this result, Stevens argues that the Kuehn declarations offer only categorical descriptions of broad categories of withholding, and thus DHS fails to meet its burden in justifying the redactions. (R. 40, Stevens' Am. Mem. at 10.) In making her argument, Stevens fails to acknowledge the *Vaughn* index DHS submitted along with its supplemental declaration to further explain the agency's redactions. FOIA litigation is often plagued by

information asymmetry between the party seeking disclosure and the government agency claiming an exemption. *Vaughn*, 484 F.2d at 823-24. Such an imbalance, the court believed, "seriously distorts the traditional adversary nature of our legal system's form of dispute resolution." *Id.* at 824-25. Thus, *Vaughn* indexes are used as an attempt to rectify the imbalance that exists in FOIA cases by providing a detailed justification for each withheld document. *Id.* at 826.

The *Vaughn* index submitted by DHS in this case identifies each of the Six Document and the portion withheld under Exemption 7(C), often in conjunction with other FOIA exemptions, and explains in detail its non-disclosure of private employee information. (R. 44-2, Ex. 1b, *Vaughn* Index.) For example, the *Vaughn* index explains that in Document 1a, which is a four-page summary of the ROI involving Edwards' theft allegations, DHS redacted the identity of a low-level employee because of the "embarrassment that low level employee could face should anyone familiar with the matter recognize the individual's involvement." (*Id.* at 7.) The index further explains that in Document 1c, which memorializes a telephone interview with Edwards, DHS redacted the names of special agents, as "releasing the identity of these employees would shed little light on OIG operations. In addition, OIG's investigative personnel have access to information concerning official law enforcement investigations and they could therefore[] become targets of harassment by members of the media, disgruntled subjects, and the general public." (*Id.* at 9.) Having reviewed the agency's *Vaughn* Index and declarations, the Court finds that DHS has "describe[d] the documents withheld and the justifications for nondisclosure in enough detail and with sufficient specificity to demonstrate that material withheld is logically within the domain of the exemption claimed." *PHE*, 983 F.2d at 250

(internal quotation marks omitted). Accordingly, the Court finds that DHS properly redacted the Six Documents.

### III. Whether DHS has properly withheld the ICE Facility DVD

Stevens also argues that DHS violated FOIA by withholding the ICE Facility DVD, which contained footage taken from a security surveillance camera located in a secure room used for ICE detainees. (R. 40, Stevens Am. Mem. at 6; R. 44-3, Ex. C, Pineiro Decl. ¶ 10.) Specifically, Stevens argues that after OIG referred the ICE Facility DVD to ICE to determine if it fell under a FOIA exemption, OIG still had a responsibility to respond to the request for the DVD, which it failed to do. (R. 40, Stevens' Am. Mem. at 6-7.) Additionally, Stevens states that ICE never provided her with a response. (*Id.* at 8.) Therefore, she argues that DHS has failed to justify its decision to withhold the DVD. (*Id.* at 6 (citing *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991); 5 U.S.C. 552(a)(4)(B)).)

As a preliminary matter, Stevens is incorrect that ICE never responded to her request for access to the ICE Facility DVD. Stevens admits in her response to DHS's Rule 56.1 statement that she received a letter dated June 27, 2013, from ICE informing her that the DVD was being withheld because portions of it were protected under Exemptions 6, 7(C), and 7(E). (R. 51, Stevens' Rule 56.1 Resp. ¶ 17.) The letter further states that ICE applied Exemptions 6 and 7(C) to protect images of ICE employees, ICE detainees, and third parties contained in the video, as well as Exemption 7(E) to protect images and video of internal agency law enforcement techniques. (R. 44-3, Ex. 9, ICE Facility DVD Letter at 37-38.) DHS provided the Court a copy of the letter, (*id.*), and Pineiro also details ICE's findings pertaining to the ICE Facility DVD in his affidavit, (R. 44-3, Ex. C, Pineiro Decl. ¶¶ 11-22). A plaintiff may not contradict facts that she had previously admitted in response to the defendant's Rule 56.1 statement. *Koszola v. Bd.*

*of Educ. of City of Chi.*, 385 F.3d 1104, 1109 (7th Cir. 2004). Therefore, DHS has established that it did, in fact, provide Stevens a response to her request regarding the ICE Facility DVD.

Additionally, Stevens' argument that OIG failed to discharge its duties by not providing its own response represents a misunderstanding of the applicable case law. Stevens cites to *Matter of Wade*, in which the Seventh Circuit held that "[o]nce a FOIA request has been made to an agency, that agency's referral to a different agency regarding disclosure does not divest the original agency of responsibility to respond to the FOIA request." (R. 40, Stevens' Am. Mem. at 7 (citing 969 F.2d 241, 247-48 (7th Cir. 1992))). Stevens argues that, therefore, OIG must provide its own response to Stevens regarding the ICE Facility DVD. Stevens fails to recognize, however, that OIG and ICE are components of the same agency. In *Wade*, the referral involved two distinct agencies, the CIA and the United States Attorney's Office, not an intra-agency referral such as the one that occurred here. Stevens has provided no case law, nor has Court's research revealed any support for the notion that an agency component must provide a response after another component of the same agency has already provided one. Ultimately, it is DHS, not OIG or ICE, that is responsible for responding to Stevens' request, and DHS has done so through ICE's response to Stevens. Accordingly, the Court finds that DHS has properly discharged its responsibility to notify Stevens of its decision to withhold the ICE Facility DVD.

As an alternative argument, Stevens argues that DHS improperly withheld the ICE Facility DVD because portions of it are reasonably segregable. (R. 40, Stevens' Reply at 4-6.) Stevens further argues that ICE possesses the technology to separate non-exempted material from exempted material on the ICE Facility DVD, and that ICE's refusal to do so flouts FOIA's purpose. (*Id.* at 5.)

The Act provides that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b). "[I]f the proportion of nonexempt factual material is relatively small and is so interspersed with exempt material that separation by the agency and policing of this by the courts would impose an inordinate burden, the material is still protected because, although not exempt, it is not reasonably segregable." *Solar Sources*, 142 F.3d at 1039. The Seventh Circuit has instructed that courts may not approve the withholding of an entire document without entering a finding on segregability of the exempt information. *Patterson*, 56 F.3d at 840 (citing *Krikorian v. U.S. Dep't of State*, 984 F.2d 461, 467 (D.C. Cir. 1993)). "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007). This presumption is in place, in part, because allegations of government misconduct are "easy to allege and hard to disprove." *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 175 (2004) (quoting *Crawford-El v. Britton*, 523 U.S. 574, 585 (1998)). "Without evidence of bad faith, the veracity of the government's submissions regarding reasons for withholding the documents should not be questioned." *Wade*, 969 F.2d at 246. The Supreme Court held that "[g]iven FOIA's prodisclosure purpose," a requester must "produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." *Favish*, 541 U.S. at 174. "If the requester successfully rebuts this presumption, the burden lies with the government to demonstrate that no segregable, nonexempt portions were withheld." *Sussman*, 494 F.3d at 1117. The Act also instructs courts to "accord substantial weight to an affidavit of an agency concerning the agency's determination as to technical feasibility under . . . subsection (b)." 5 U.S.C. § 552(a)(4)(B).

Here, Pineiro attests that ICE reviewed the video files and determined that portions of the video were exempt from disclosure pursuant to FOIA Exemptions 6, 7(C), and 7(E). (R. 44-3, Ex. C, Pineiro Decl. ¶ 11.) ICE sought to protect from disclosure both the images of ICE employees, ICE detainees, and third party individuals contained in the video, as well as the location and fields of view of security surveillance cameras. (*Id.* ¶¶ 14, 17.) He further attests that ICE withheld both video files on the ICE Facility DVD because the ICE FOIA Office determined that it could not segregate non-exempt material from the exempt material. (*Id.* ¶ 19.) Pineiro explained that in order for records to be released, they must be converted into either an Adobe PDF file or a Microsoft Excel spreadsheet. (*Id.* ¶ 21.) He attests that the video files on the ICE Facility DVD were in the AVI format, and that "[t]he ICE FOIA office lacks the technical expertise, hardware and software to convert these files to PDF format or process them in any other manner, and thus is unable to properly redact the exempt information." (*Id.* ¶ 22.)

Stevens attempts to rebut the presumption that ICE provided all reasonably segregable material in two ways. First, she points the Court to ICE's FOIA Log to demonstrate that it regularly receives FOIA requests for videos. (R. 50, Stevens' Reply at 6.) Secondly, she cites to Youtube videos produced by ICE that redacts images and masks the identities of individuals contained in the footage as proof that ICE has the technical capability to reasonably segregate video files. (*Id.* at 5-6.) Stevens argues that ICE "has made a conscious choice not to make video editing and redaction capabilities available to its FOIA office." (*Id.* at 6.) Stevens argues that ICE's actions have the "drastic consequence of literally blocking from public view all agency actions captured on video files that are partially exempt from disclosure." (*Id.* at 6.)

The Court is troubled by ICE's inability to segregate video footage, especially given the large number of requests for video records that ICE's FOIA Office receives. Requiring files to

be converted to Adobe PDF or Microsoft Excel in order to be processed and segregated eviscerates the ICE FOIA Office's ability to process video files and severely limits the agency's ability to comply with FOIA's "prodisclosure" purpose. A large federal government agency such as ICE should have sufficient technological expertise and equipment to segregate data from its video files. Nonetheless, Stevens has not provided probative evidence of bad faith on the part of the agency in withholding the ICE Facility DVD. The FOIA Log and Youtube clips that Stevens cites to support her assertion fail to demonstrate that the ICE FOIA Office has the technology to segregate the ICE Facility DVD and willfully refuses to do so. In the absence of evidence of bad faith, both the case law and FOIA itself command this Court to give deference to ICE's determination regarding its inability to segregate the ICE Facility DVD. *See Sussman*, 494 F.3d at 1117; 5 U.S.C. § 552(a)(4)(B). Accordingly, the Court finds that DHS properly withheld the ICE Facility DVD in full.

## IV. Whether DHS has properly withheld the Airport DVD

Similar to her argument regarding the ICE Facility DVD, Stevens argues that DHS has failed to prove that it can produce no reasonably segregable portion of the Airport DVD. (R. 40, Stevens' Am. Mem. at 8.) DHS withheld the Airport DVD in full based on FOIA Exemptions 3, 6, 7(C), and 7(E). (R. 44-1, Ex. A, Kuehn Decl. ¶ 46; R. 47, DHS's Mem. at 8.) Unlike Pineiro's claims that ICE lacks the technical expertise to redact exempted material, Kuehn attests that OIG's Office of Training and Workforce Development has access to software with video-editing capabilities. (R. 44-2, Ex. B, Kuehn Suppl. Decl. ¶ 5.) Specifically, Kuehn attests that OIG has a license through DHS Headquarters for use of Adobe's "Creative Suite" which would "theoretically allow one to segregate video and blur images to obscure information." (*Id.*) Kuehn offers a litany of reasons why OIG cannot redact exempt information from the Airport

DVD, including that OIG's license for use of the Creative Suite software is limited to "developing eLearning applications." (*Id.*) Kuehn also attests that no one in OIG has the experience or training to use the software. (*Id.*) Kuehn does not attest that no employee *within* DHS has the expertise to use the software, and the Court finds it would strain credulity to believe such an assertion.

While an agency is entitled to the presumption that it complied with its obligation to disclose all reasonably segregable material, *Sussman*, 494 F. 3d at 1117, OIG has readily admitted that it has not done all it can to provide Stevens with non-exempt footage from the Airport DVD. The Court has noted the good faith effort between both parties to resolve the outstanding document requests in this case. The Court is troubled that instead of demonstrating that same good faith in response to this DVD request, OIG has elected to hide behind the bureaucratic divisions of DHS to avoid complying with FOIA's "prodisclosure" mandate. DHS has conceded its failure to discharge its duties pertaining to the Airport DVD, and therefore it is unclear whether any segregable, nonexempt portions of the Airport DVD were withheld. *See id.* Consequently, the Court orders the OIG FOIA Office to consult with employees at DHS headquarters familiar with Adobe's Creative Suite video editing software and either: (1) produce a DVD that properly redacts protected information under FOIA Exemptions 3, 6, 7(C), and 7(E); or (2) submit to the Court an affidavit by an OIG FOIA Specialist detailing DHS's efforts to segregate the non-exempt material and articulating why the Airport DVD is not "reasonably

segregable" using the Adobe Creative Suite software.[2]

Seeking to avoid this result, DHS argues that Stevens narrowed her request for the Airport DVD to a request for particular screenshots of the DVD in her August 13, 2013 letter to DHS. (R. 47, DHS's Mem. at 10; *see* R. 44-1, Ex. 8, Aug. 13, 2013 Letter at 56-57.) DHS further argues that Stevens should not be able to re-assert her original request at this stage. (*Id.*) Stevens counters that she never agreed to narrow her request for the Airport DVD. (R. 51, Stevens' Rule 56.1 Resp. ¶ 20.)

DHS supports its argument by citing to *Lechliter v. U.S. Department of Defense* for the proposition that "[a] requestor may not challenge the adequacy of a search after an agency limits the scope of a search in response to direction from the requestor." 371 F. Supp. 2d 589, 595 (D. Del. 2005). The Court notes that Stevens is not challenging the adequacy of DHS's search for the Airport DVD, but rather its decision to withhold the DVD in full. Nonetheless, the Court has reviewed Stevens' August 13, 2013 letter to DHS, and finds no support for DHS's argument that Stevens was narrowing her request for the Airport DVD. The letter makes clear that Stevens sought additional information about the content of the DVD before she could determine whether she would relinquish her request for the full DVD. (R. 44-1, Ex. 8, Aug. 13, 2013 Letter at 56-57.) While the Court is required to make all *reasonable* inferences in favor of DHS in resolving Stevens' motion, it will not strain to read Stevens' letter to convey a meaning that plainly is not there. Accordingly, the Court finds that Stevens did not narrow her request, and thus it was

---

[2] According to Kuehn's declaration, the video editing software is available to OIG through DHS headquarters. The clear implication from her declaration is that the ICE FOIA Office, as a component of DHS, would also have access to this technology. While the Court does not presume familiarity with the complex bureaucratic divisions within DHS, it fails to comprehend how one component has access to software and another does not. Nonetheless, because Stevens failed to allege any evidence of bad faith against ICE, the Court is not empowered to inquire further into the veracity of Pineiro's affidavit regarding ICE's ability to segregate the ICE Facility DVD. *See Wade,* 969 F.2d at 246.

improper for DHS to withhold the Airport DVD in full without attempting to reasonably segregate non-exempt material.

## V. Whether DHS is entitled to summary judgment on the remainder of the withheld records

Plaintiff has brought a motion for partial summary judgment, limiting her motion to the discrete issues of the adequacy of the agency search, and the alleged improper withholding of: (1) the Six Documents; (2) the ICE Facility DVD; and (3) the Airport DVD. (R. 36, Stevens' Mot. at 1.) DHS argues, however, that it is entitled to summary judgment with respect to Stevens' entire FOIA request because it has conducted numerous searches for responsive records and has not improperly withheld any records. (R. 47, DHS's Mem. at 1.)

As stated above, "[a] district court may grant summary judgment to the government in a FOIA case only if 'the agency affidavits describe the documents withheld and the justifications for nondisclosure in enough detail and with sufficient specificity to demonstrate that material withheld is logically within the domain of the exemption claimed.'" *Patterson*, 56 F.3d at 836 (quoting *PHE*, 983 F.2d at 250); *see also Kimberlin v. U.S. Dep't of Treasury*, 774 F.2d 204, 210 (7th Cir. 1985) (affirming summary judgment for the agency where "[t]he [agency] affidavit describes the requested documents and the justifications for nondisclosure with reasonable specificity, the withheld information logically falls within the exemptions, and there is no evidence contrary to the affidavits or of bad faith by the [agency]"). Because "both the court and the requester must look to the affidavits for an explanation of the agency's decision to withhold information[,] an affidavit that contains merely a 'categorical description of redacted materials coupled with categorical indication of anticipated consequences of disclosure is clearly inadequate.'" *Patterson*, 56 F.3d at 836 (quoting *PHE*, 983 F.2d at 250) (internal alterations omitted). With these principles in mind, the Court will proceed to examine the agency's

declarations to determine if it has adequately described the documents withheld and provided sufficient justification for nondisclosure.

## A. Exemption 5

In Kuehn's declaration, she attests that OIG applied Exemption 5 to a small portion of interview notes memorializing witness interviews conducted by investigators during the course of the Edwards investigation. (R. 44-1, Ex. A, Kuehn Decl. ¶ 56.) She further attests that these documents reference case-related discussions, requests for information, and discussions of issues that arose in connection with OIG's investigative activities before issuance of the final ROI. (*Id.*)

Exemption 5 provides for the protection of certain documents from public view if the documents are "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(B)(5). The purpose of the Exemption "is to prevent injury to the quality of agency decisions." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 (1975). Exemption 5 has incorporated the deliberative process privilege, which exempts from disclosure those documents that reflect the deliberative or policy-making processes of governmental agencies. *Enviro Tech Int'l., Inc. v. U.S. Evntl. Prot. Agency*, 371 F.3d 370, 374 (7th Cir. 2004). To fall within the deliberative process privilege, the material in question must satisfy two prongs: (1) it must be predecisional, meaning that the material is "antecedent to the adoption of an agency policy"; and (2) it must be deliberative, that is "actually . . . related to the process by which policies are formulated." *Id.* (quoting *Jordan v. U.S. Dep't of Justice*, 591 F.2d 753, 774 (D.C. Cir. 1978) (en banc) (internal alterations omitted)). The agency "bears the burden of proving what

deliberative process was involved and what role the document played in that process." *King v. Internal Revenue Serv.*, 684 F.2d 517, 519 (7th Cir. 1982).

The Court cannot discern how the interview notes at issue in this case pertain to the adoption of any agency policy. The Edwards investigation involved an internal investigation of DHS employees, and the interview notes were used in the preparation of a final investigative summary. Kuehn never indicates how any agency policy was adopted or amended as a result of this investigation. *Cf. Enviro Tech Int'l*, 371 F.3d at 377 (affirming use of Exemption 5 to protect disclosure of documents pertaining to the EPA's proposed rule establishing a recommended workplace exposure limit for a particular chemical compound). Further, Kuehn fails to identify which documents were redacted under Exemption 5, other than a categorical description of "interview notes." Therefore, without further explanation from DHS, the Court cannot conclude that the interview notes are "predecisonal" or "deliberative." *See Vaughn v. Rosen*, 523 F.2d 1136, 1147 (D.C. Cir. 1975) (holding that the agency's affidavits fail to carry its burden of proof "because at no place do they define, explain, or limit the 'deliberative process' which the Government seeks to protect).

DHS had a reasonable opportunity to meet its burden during the lengthy course of this litigation, and it has failed to do so. Accordingly, the Court must deny DHS's motion for summary judgment on this issue. The Court will order DHS to turn over documents withheld under this Exemption. Out of an abundance of caution, the Court will allow DHS to submit these documents to the Court for an *in camera* review prior to their disclosure.

**B.     Exemptions 6 and 7(C)**

The Court has addressed in Section II DHS's use of Exemptions 6 and 7(C) to redact certain personal information of agency employees and third parties. For the sake of brevity, the

Court will not repeat its analysis pertaining to these Exemptions. In summary, DHS established that the Edwards investigation was undertaken for a valid law enforcement purpose, *see Patterson*, 56 F.3d at 837, and that disclosure of the withheld information would be an unwarranted invasion of personal privacy of DHS employees, *see Reporters Comm.*, 489 U.S. at 773. The Court finds that the applicability of Exemptions 6 and 7(C) to the Six Documents equally as forceful to the remainder of records withheld under these exemptions. Accordingly, the Court finds that DHS has properly redacted the names and identifying information of DHS employees and third parties pursuant to FOIA Exemptions 6 and 7(C).

## CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Stevens' partial motion for summary judgment (R. 36). In addition, the Court GRANTS IN PART and DENIES IN PART DHS's motion for summary judgment (R. 45). Within 30 days of the date of this opinion, the Court orders DHS to provide a DVD to Stevens of reasonably segregated material from the Airport DVD, or submit a detailed affidavit explaining the reasons for its inability to do so. The Clerk of the Court is instructed to enter a final judgment partially in favor of Stevens in accord with this opinion. The Court will retain jurisdiction to enforce this opinion.

ENTERED: _____

**Chief Judge Rubén Castillo**
**United States District Court**

Dated: November 4, 2014

29